```
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4             Plaintiff,             )
                                      )
 5     v.                             )  No. 15 CR 457
                                      )
 6   JUAN MANUEL SANCHEZ-JARA,        )  Chicago, Illinois
                                      )  September 14, 2016
 7             Defendant.             )  11:00 a.m.

 8                     TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE JORGE L. ALONSO
 9

10   APPEARANCES:

11   For the Plaintiff:        HON. ZACHARY T. FARDON
                               United States Attorney
12                             BY:  MR. PAUL H. TZUR
                                    MS. ALLISON A. RAY
13                             Assistant United States Attorneys
                               219 South Dearborn Street
14                             Suite 500
                               Chicago, Illinois  60604
15                             (312) 353-5300

16   For the Defendant:        LAW OFFICE OF JOHN T. KENNEDY
                               BY:  MR. JOHN T. KENNEDY
17                             820 Davis Street
                               Suite 434
18                             Evanston, Illinois  60201
                               (847) 425-1115
19

20

21

22

23

24

25
```

Nancy C. LaBella, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1222
Chicago, Illinois  60604
(312) 435-6890
Nancy_LaBella@ilnd.uscourts.gov

1          THE CLERK:  15 CR 457, USA v. Sanchez-Jara.

2          MR. TZUR:  Good morning, Your Honor.  Paul Tzur for

3    the United States.

4          MS. RAY:  Allison Ray for the United States.

5          INTERPRETER O'HANLON:  Good morning, Your Honor.

6    Kathleen O'Hanlon, interpreter.

7          INTERPRETER PUJOLS:  And Moira Pujols, P-u-j-o-l-s,

8    first name M-o-i-r-a, also Spanish interpreter.

9          MR. KENNEDY:  Good morning, Your Honor.  John Kennedy

10   for Mr. Sanchez-Jara, panel attorney.

11         THE COURT:  All right.  And Mr. Sanchez-Jara is

12   present.

13         Okay.  We have -- we discussed on the last court date

14   the purpose of today's hearing, and that is to deal with

15   document No. 77.  That is the motion of defendant to suppress

16   evidence obtained from the use of a cell phone simulator.  I

17   have reviewed that, as well as the attachments.  I have

18   reviewed the government's response and the exhibits, which

19   include the application, the affidavit, and the actual order.

20   And I've reviewed the reply in support of the motion.  That's

21   document No. 85.

22         Mr. Kennedy, how do you propose to proceed, sir?

23         MR. KENNEDY:  I prepared a defendant's exhibits list

24   for this hearing.

25         One of the things that struck me, the more I worked

1  on this case, at this stage of it, meaning the motion

2  addressing cell phone simulator, I am not so -- the only thing

3  Mr. Sanchez -- the whole point of the cell phone simulator is

4  defendant and other people outside of the person using it

5  don't know that it's being used.  So they don't know there's

6  a -- there's nothing for them to testify to about, the

7  policeman was at my door, he gave me a warrant, he didn't give

8  me a warrant.  It's not that kind of situation.

9          So the bottom line is I'm wondering -- on the cell

10  phone simulator, I am wondering what Mr. Sanchez-Jara can

11  testify to that would bear on use of the cell phone simulator.

12          On the other motions where there's physical contact

13  between the agents and Mr. Sanchez-Jara, those -- they have

14  things they know about.  You know, they dispute what it means,

15  what the facts are.  But they know that each other is there.

16  In this case, at 7:55 in the morning, Mr. Sanchez-Jara doesn't

17  know that the agents are doing anything.  And actually in a

18  sense, the agents don't know where the house is so they're

19  kind of fumbling around.  There's no personal contact.

20  There's no knowledge of the use of the cell phone simulator.

21          The only thing that I could see that would matter for

22  Mr. Sanchez-Jara to testify to is that he had a cell phone

23  that ended in certain digits, which I'm afraid to recite from

24  memory.  That's the one thing.

25          He can testify to where he lived.  With the search,

4

1    we don't even get into the issue about two apartments being in

2    the building because I believe there is no question -- no

3    question that 3606 West 81st Street is his residence in fact.

4    And that alone gives him the standing to complain about what

5    he states is an illegal search of that building.

6         So unless there's a contention that he does not live

7    at -- on July 27th, 2015, that he did not live at 3606 West

8    81st Street, and unless there's a contention that he did not

9    have a certain cell phone, there's really nothing for him to

10   say at this stage.

11        Now, the government's argument is that the search was

12   proper.  And then the government argues that -- about consents

13   that were given down the road.  But these are consents after

14   the initial contact of 3:45 in -- more or less -- in the

15   afternoon.  There was a contact at about 11:00 in the morning,

16   but that was a contact and didn't really come to anything.

17        What would be really necessary for the Court's

18   understanding of this case, I believe, is the testimony of the

19   agents, Krystal Williams and Tino Gonzalez.  From the reports,

20   it appears Crystal Williams -- the Agent Crystal Williams --

21   is the individual in charge of the whole thing.

22        Previously Mr. Tzur told me he wasn't going to be

23   calling any agents.  I realized that I knew of no way to

24   subpoena them.  I don't have their home addresses, and I don't

25   know of any agreement with Homeland Security that a person can

1    drop off a subpoena with Homeland Security and it will be

2    served.  I know Chicago Police have such an arrangement.  You

3    just give your subpoena to the Chicago Police Department

4    representative and that person sees to it that the officer

5    gets the subpoena.

6         Mr. Tzur indicated to me that he would not be calling

7    any witnesses outside of Mr. Sanchez-Jara.  So yesterday, just

8    to put it in writing, I sent a request for the specific

9    witnesses, Krystal Williams and Tino Gonzalez, to appear

10   today.  The response was that they had other commitments and

11   could not be here.  Today was just going to be for Sanchez-

12   Jara's testimony anyway.

13        Within the defendant's exhibits list folder, I feel I

14   have enough evidence to show that the cell phone simulator was

15   used.  It leaves a lot of questions sort of unanswered, but it

16   does make it clear that the cell phone simulator was what was

17   used to find Mr. Sanchez-Jara's home and him.  I believe

18   that's enough to present this issue.  If --

19        THE COURT:  Again, we are just dealing with the

20   motion No. 77.  So I know that you went beyond that issue in

21   your filing.  The government also went beyond the issue in its

22   response.

23        MR. KENNEDY:  Yes.

24        THE COURT:  I say that because, for instance, there's

25   a section about consent --

1          MR. KENNEDY:  Yes.

2          THE COURT:  -- in your motion.

3          But just on the issue of whether the use of the

4     simulator was valid and whether evidence should be suppressed

11:23:08    5     based upon the fact that it wasn't valid, your position is

6     that you need not call your client.

7          I would add to what you've already mentioned:  His

8     residence; ownership of the phone in question.  I would add a

9     lack of consent to any search that you're alleging took place

11:23:32   10     of the house, right?

11          MR. KENNEDY:  Yes, sir.

12          THE COURT:  Electronic search of the house.

13          MR. KENNEDY:  Unless the phone was in the house.

14          THE COURT:  Right.

11:23:38   15          Mr. Tzur, any issue with that?

16          MR. TZUR:  No.  I think I agree with Mr. Kennedy.

17     The government totally agrees that Mr. Sanchez-Jara was in

18     possession of the phone that is repeatedly mentioned in the

19     government's papers, that number that ends in 2832.  The

11:23:56   20     government agrees and it sounds like Mr. Kennedy is not

21     objecting or opposing the fact that Mr. Sanchez-Jara on

22     July 27th, 2015, lived at the 3606 West 81st Street residence.

23          The government --

24       (Brief pause.)

11:24:13   25          MR. TZUR:  Right.  Government absolutely agrees that

11:24:33

1    a -- these electronic investigative techniques in the form of
2    cell phone simulator or whatever the technology was to find
3    Mr. Sanchez-Jara's phone were used in the morning of July
4    27th, 2015.  The government agrees that Mr. Sanchez-Jara did
5    not give consent for that search -- for the use of that
6    technology to find Mr. Sanchez-Jara's phone.

7         And I want to be specific about what the consent is
8    that Mr. Sanchez-Jara gave versus what consent he did not
9    give.  He did not give consent for law enforcement officers to

11:24:51

10   find -- to locate his phone in the morning of July 27th, 2015.
11   I think the parties all agree about that, including in his
12   home, as Ms. Ray is reminding me.

13        My understanding from last week about potential
14   testimony from Mr. Sanchez-Jara was to take it the next step.

11:25:07

15   The government argued to Your Honor last week that at this
16   point in the record, the government didn't believe that the
17   defendant had met -- had established a prima facie showing to
18   be able to warrant the kind of evidentiary hearing that
19   Mr. Kennedy is requesting.

11:25:21

20        And one way for Mr. Sanchez-Jara and Mr. Kennedy to
21   get over that threshold would be to have Mr. Sanchez-Jara take
22   the stand and make that prima facie showing with the idea that
23   the government would be able then to cross-examine
24   Mr. Sanchez-Jara on whatever issues Mr. Sanchez-Jara brought

11:25:40

25   up.

1    And the place where Your Honor noted that there could

2  potentially still be a need for a hearing, assuming that Your

3  Honor decides that the warrant for the location information

4  was valid, is in the -- two areas:  One, whether the basement

11:25:59   5  unit of 3606 was separated from the rest of the house in such

6  a way that Individual B could not give -- did not have actual

7  or apparent authority to give consent to search the entirety

8  of the house.  And then, secondly, whether, irrespective of

9  the legality of the initially approaching Sanchez-Jara -- and

11:26:25  10  taking defendant's facts as true that that initial approach

11  amounted to an arrest of Sanchez-Jara -- whether there was any

12  additional conduct by law enforcement officers between the

13  time of that initial stop and the time that Mr. Sanchez-Jara

14  gave consent that could be considered coercive.

11:26:46  15    The government's position is that at this point,

16  there's nothing that Mr. Sanchez-Jara has provided in his

17  affidavits in the record to establish that there was any sort

18  of coercion to allow for this case to go to an evidentiary

19  hearing.  So the government's understanding was that that

11:27:00  20  would be why Mr. Sanchez-Jara would be taking the stand today.

21  And if I misunderstood Your Honor, then that's -- that's my

22  fault.

23    THE COURT:  I don't think I was clear.  And, in fact,

24  I think the order I entered was actually incorrect in terms of

11:27:14  25  the numbers.  But I thought that the parties understood that

1    we were going forward on 77 today.

2              MR. TZUR:  Right.

3              MR. KENNEDY:  Yes.

4              THE COURT:  The other hearings that --

5              MR. KENNEDY:  We understood --

6              THE COURT:  -- would require testimony are set for

7    next week.

8              MR. TZUR:  And I think that's right, Your Honor.  And

9    if Your Honor remembers when we spoke about this prior to your

10   entry of the minute order, we had talked about this idea of

11   possibly needing to bifurcate these two issues because, from

12   the government's perspective, it -- as I said, if you do

13   decide that 77, you're going to deny that motion and, in fact,

14   that the warrant was valid, from the government's perspective,

15   there's no need for that hearing because everything else,

16   according to Mr. Kennedy's argument, flows as being

17   constitutional.

18             And Your Honor pointed out that the one exception to

19   that could be that the consents were somehow otherwise coerced

20   from Mr. Sanchez-Jara.  But that at the time, based on the

21   documents itself, there wasn't enough in the documents to be

22   able to establish what that coercion might have been.

23             MR. KENNEDY:  I'm a little bit confused by the way

24   counsel is stating it, but I think we're on the same page on

25   this, which is basically I'm saying that anything before

1   3:45 p.m. doesn't really bear on this No. 77 motion because

2   all the cell phone simulator stuff was done by then.

3          My only concern -- I'm not abandoning the other

4   arguments on coercion and consent and that kind of stuff.  But

5   there was never an opportunity for anybody to coerce or obtain

6   consent before, say, around 3:45 when the physical contact

7   began.

8          And as far as consent by Individual B, that's a

9   consent -- whatever impact it has, that's a consent that was

10  made sometime after 3:45 p.m.

11         MR. TZUR:  Absolutely.

12         MR. KENNEDY:  So, again, that has no -- really has no

13  bearing on this Fourth Amendment cell phone simulator search

14  issue, the Fourth Amendment issue.

15         MR. TZUR:  The government agrees with that, Your

16  Honor.

17         MR. KENNEDY:  And I guess the only other thing I'd

18  like to mention is I -- if the Court finds that it's a valid

19  search -- you know, even if the Court finds it's a valid

20  search, I don't see how coercion -- as I stand here right

21  now -- how coercion and consent plays into it.  I would ask to

22  be allowed to --

23         THE COURT:  You mean today, on this motion?

24         MR. KENNEDY:  Yeah.

25         THE COURT:  Right.  It doesn't.  Mr. Tzur, you're not

1    saying it does?

2              MR. TZUR:  No, it doesn't.

3              THE COURT:  Okay.  All right.  The only unresolved

4    issue right now in my mind is whether Mr. Kennedy is seeking

5    to call agents or not as part of this motion.

6              MR. KENNEDY:  I think I would be remiss if I did not

7    seek to call agents because this is -- it's a new question of

8    law.  And any -- and I think it's a given that whichever side

9    loses is going to appeal.  And the first thing the appellate

10   court will say is there's an incomplete record.

11             So I would persist in my request to call these

12   witnesses, Krystal Williams and Tino Gonzalez.  I can't call

13   the Secret Service person because I don't know who he is.  And

14   these two agents I list are the ones that seem to know

15   something about it.  And maybe they're just going to get up

16   there and say, we don't know anything about it and we won't

17   tell.

18             THE COURT:  And, Mr. Kennedy, what is it that you

19   think you need to elicit at an evidentiary hearing in regard

20   to this motion, just this motion, not the other two motions?

21             MR. KENNEDY:  How the cell phone simulator works.  I

22   attached cases.  One from -- it turned out -- it's a Rockford

23   court case, where the magistrate judge explains, to the best

24   of his knowledge, how it works.  I attached Lambis on -- which

25   includes a thing about how it works.  But I don't have any

1    real -- I don't have any live testimony about how it works.

2    And I don't know if they'll -- if these witnesses would just

3    say, I don't know.  But maybe they do know.  And I think I

4    would be remiss in not at least trying to find out whether

11:32:00   5    they know.  I would be able to ask about what the radius is,

6    the distance around that this machine is effective at.  As I

7    prepared an exhibit that -- based on a radius of 560-some

8    meters, by my math, it all worked out to a search of about a

9    third of a mile radius.  Now, maybe they would know that's

11:32:25   10   right.  Maybe they would know that's wrong.  Maybe they can

11   agree or disagree with the proposition that the cell phone

12   simulator sends out a signal to the cell phone in the building

13   where it is and forces the cell phone to emit a signal back,

14   so there's an electronic intrusion into the building and an

11:32:47   15   electronic response.

16          It's not -- I once thought it was just like, you

17   know, those World War II movies where you see the antenna

18   going around in a circle on top of a van.  It's more

19   sophisticated -- triangulation.  Apparently it's not

11:33:02   20   triangulation.  It's a measurement of the intensity of the

21   signal.  And somehow the way it -- the simulator obtains the

22   signal is to send a command to the cell phone, and that makes

23   the cell phone respond.  So that's -- that's a big part of the

24   search and seizure aspect.  It's an intrusion into the house.

11:33:27   25          THE COURT:  Is there a dispute regarding that,

1    Mr. Tzur?

2        MR. TZUR:  I don't think so.  The government's

3    position is that everything that Mr. Kennedy just said is

4    totally irrelevant for your assessment of the question that's

11:33:39  5    asked in document 77.

6        THE COURT:  In terms of everybody else within a third

7    of a mile?

8        MR. TZUR:  I mean --

9        THE COURT:  Is he correct, you're not here to defend

11:33:47  10    someone's else's rights down the block, are you?  You don't

11    have standing to do that.

12        MR. KENNEDY:  No, Judge.  But it shows the general

13    search capacity of the method.  It shows what's happening.  It

14    fleshes out how it works.  Whether it ultimately specifically

11:34:06  15    bears on the case, that's a different matter.  And I

16    understand the Court's observation that I only represent

17    Mr. Sanchez-Jara, and it's his house and his cell phone that's

18    at issue here.  But an understanding of the mechanism, I

19    think, is good to have where there's a novel issue being

11:34:28  20    presented; and the more knowing about it, the better.

21        THE COURT:  And the parties -- even if Mr. Tzur is

22    correct, the parties have not attempted to work out any sort

23    of stipulation regarding what actually happened?

24        MR. TZUR:  I haven't heard anything from Mr. Kennedy

11:34:49  25    about a stipulation regarding the actual -- how this

1    technology works or the significance of this technology.  And,

2    again, the government's position is that all that is

3    absolutely irrelevant to a decision on whether or not law

4    enforcement officers had Fourth Amendment authority to conduct

11:35:08    5    the search that they conducted.  Mr. Kennedy is throwing out

6    words like an intrusion into the house.  Sure, they -- law

7    enforcement officers had express authority from the judge who

8    issued the warrant in this case to do just that, to make -- to

9    use electronic technology to intrude into individuals' houses

11:35:27    10   to locate this phone.

11        The question that Mr. Kennedy is asking is answered

12   by the results of the search.  Mr. Kennedy knows what the

13   results of the search were.  It was that the law enforcement

14   officers found the defendant's phone in this particular house

11:35:45    15   at 7:55 in the morning.  If the result of the search was

16   something else, that law enforcement officers, for example,

17   used heat-sensing technology to identify that Mr. Sanchez-Jara

18   had a marijuana grow in his house -- and I'm not suggesting

19   that he did.  I'm using a hypothetical --

11:36:03    20        MR. KENNEDY:  The Kyllo case.

21        MR. TZUR:  Right.  Or some other technology to find

22   out something else about Mr. Sanchez-Jara.  Then we would be

23   talking about whether or not law enforcement conducted a

24   warrantless search with some other technology for which the

11:36:19    25   law enforcement officers on the scene didn't have authority to

1    use.

2            Here, they had the authority to use electronic

3    technology to find the information that they found.  They

4    found -- they used electronic technology to find Mr. Sanchez-

11:36:34    5    Jara's phone in a specific location.  That's what the warrant

6    authorized.  That's what the warrant information returned.

7    And no more and no less.  That's what it was.  And there's --

8    there's no relevant information in how that process took

9    place.  What matters --

11:36:56    10            THE COURT:  But he should have a right to establish

11    that, in fact, this search -- the search that was conducted

12    was conducted.

13            MR. TZUR:  And --

14            THE COURT:  And he hasn't -- how else can he

11:37:09    15    establish that?  Again, there's no agreement here; there's no

16    stipulation here; there's no uncontested facts here.

17            MR. TZUR:  No.  And, again, the government --

18    Mr. Kennedy hasn't reached out -- it's his motion.  He hasn't

19    reached out to me to ask if we would stipulate to some set of

11:37:25    20    facts.

21            The government absolutely stipulates that this search

22    took place.  It is in the report that the government provided

23    to Your Honor in the copy.  It's in the report that the

24    government provided to Mr. Kennedy way back in November

11:37:37    25    of 2015.

1          The search took place.  Law enforcement officers used

2     this technology, without question, to locate Mr. Sanchez-

3     Jara's cell phone at about 7:55 in the morning on July 27th,

4     2015.  That is -- that is an uncontested fact.  But that is

11:37:53   5     all that was done, which is my point about finding other

6     information about Mr. Sanchez-Jara, like, for example, that

7     heat-seeking technology to find a marijuana grow.  No --

8     there's no other record of any other sort of technology being

9     used; no results showing that any sort of other technology was

11:38:11  10     used.

11          THE COURT:  And, again, if you're forced to name that

12     technology, you would say cell phone simulator?

13          MR. TZUR:  Yes.  That's my understanding of what that

14     technology is.

11:38:22  15          THE COURT:  Mr. Kennedy, so we have that stipulation,

16     that representation, that those are uncontested facts; that

17     that search, in fact, took place; that they used that

18     technology; and at 7:55 a.m., through that technology and that

19     search of the home, which was the residence of Mr. Sanchez-

11:38:42  20     Jara, that they were able to locate the phone.  There's also a

21     stipulation -- it's uncontested that -- that, in fact, that

22     phone number ending in those digits was your client's; and

23     that he was not -- consent was not requested for that search;

24     consent was not given for that search that resulted in that

11:39:01  25     finding at 7:55 in the morning.

1      So accepting that, sir, what else do you think that

2  you need to go forward on this limited motion?

3      MR. KENNEDY:  You know, Your Honor, I believe the

4  Court has basically stated enough of a factual basis.  I think

11:39:25   5  it would be advisable to have -- and I think we may have

6  already done it -- some kind of stipulation that the facts as

7  described in the -- by the magistrate judge in Rockford on how

8  cell phone simulators work is going to be accepted.

9      THE COURT:  Mr. Tzur?

11:39:48  10      MR. TZUR:  Yeah.  The reason why the magistrate judge

11  in Rockford went into that analysis is because that search was

12  a search conducted without an express warrant authorized by

13  any judge in the Western District of Illinois -- the Western

14  Division of the Northern District, excuse me.

11:40:09  15      And so that judge was analyzing, in light of the

16  technology that was used by the agents in that case, whether

17  or not the agents conducted a warrantless search.

18      Here, that question is moot because the agents did,

19  in fact, have a warrant.  I keep coming back to that key

11:40:28  20  point.  The agents had a warrant in this case to do exactly

21  what the results said they could do, meaning --

22      MR. KENNEDY:  Could I respond?

23      THE COURT:  Yes.

24      MR. KENNEDY:  The Rockford case I believe was one

11:40:42  25  about how long information drawn from non-target phones would

1    be stored.  But it doesn't even matter because the cell

2    phone -- there's a description of how cell phone simulators

3    work in that case.

4         But, anyway, the other thing is on this business if

11:40:59   5    there was a warrant for the cell phone search, what I keep

6    pointing out and keeps getting not even addressed by the

7    government is that there was -- there are different kinds of

8    probable cause for different purposes.  There's the probable

9    cause standard for a Fourth Amendment search and seizure.  And

11:41:25  10    my whole reply in support of this cell phone motion talks

11    about that.

12         And I've got -- I cite the different standards.  The

13    Fourth Amendment was, there's a substantial basis for

14    concluding that a search would uncover evidence of a crime.

11:41:42  15    And that's the Gates case.

16         The probable cause that's had in the warrant in

17    Sanchez's case is that there's probable cause that there are

18    reasonable grounds to believe that the contents and so on are

19    relevant and material to an ongoing criminal investigation.

11:42:15  20    That is a much lower standard.  It's not -- it's apples and

21    oranges.  It's entirely different.  I set both out on page 2

22    of defendant's reply.  I mean, I'm not trying to hide

23    anything.

24         The other thing is that in the application, the

11:42:35  25    applicant makes a point of saying, we are only seeking

1    probable cause that's -- to find relevant and material to an

2    ongoing criminal investigation materials.  He points that out

3    to the judge in the application.

4         So how can this be then taken to be a Fourth

11:42:58  5    Amendment warrant for search of a home?

6         THE COURT:  All right.  Mr. Kennedy, you're arguing

7    the motion.

8         MR. KENNEDY:  Yes.

9         THE COURT:  Mr. Tzur is trying to argue the motion

11:43:04  10   too.  That's where I'm trying to get also.  But I'm trying to

11   figure out --

12        MR. KENNEDY:  Yes, sir.

13        THE COURT:  -- whether you have a right to continue

14   so that you can bring somebody in or whether we are going to

11:43:16  15   proceed to argument today.

16        In terms of the exhibits, sir, that you prepared,

17   most of them are actual exhibits and filings.  We do have that

18   No. 7 that you alluded to, sir, the area of search with cell

19   phone simulator, which appears to be something that you

11:43:41  20   prepared?

21        MR. KENNEDY:  Yes, it is.  I would probably

22   characterize it more as a demonstrative exhibit than an

23   evidentiary exhibit.

24        THE COURT:  And we have the photographs, which --

11:43:52  25        MR. KENNEDY:  Yes, sir.

1      THE COURT:  -- I don't think are relevant today.

2      MR. KENNEDY:  I agree.  I don't see how they have any

3  relevance today.  I just don't.

4      THE COURT:  What's the government's position

5  regarding the admissibility of these exhibits for today's

6  hearing?

7      MR. TZUR:  Mr. Kennedy just handed them to me just

8  before Your Honor walked out.  I think the majority of them

9  are exactly what Your Honor said, things that have already

10  been attached to documents that Your Honor has seen or other

11  pieces of evidence that are not contested.

12      No. 7 I do challenge.  I think Mr. Kennedy gets it

13  wrong.  He's reading -- he's reading information from a report

14  that is different from the issue that he's bringing with the

15  cell phone simulator.

16      My understanding, Your Honor, about No. 7 is that

17  Mr. Kennedy is trying to show the radius in which the cell

18  phone simulator technology reaches, ostensibly to show other

19  individuals who might have had their phones searched when law

20  enforcement officers were out in the morning trying to find

21  Mr. Sanchez-Jara's phone.  I think that's what Mr. Kennedy is

22  driving at with this piece.

23      One, it, again, is irrelevant because what matters is

24  the search of Mr. Sanchez-Jara's phone.  And law

25  enforcement -- the issuing judge allowed for the search of

1  homes to find Mr. Sanchez-Jara's phone, not just the search of

2  Mr. Sanchez-Jara's home to find that one phone.

3  Two, defendant doesn't have any standing to raise

4  Fourth Amendment issues for other individuals whose phones

11:45:37  5  might have been searched as a result of the use of this

6  technology.

7  MR. KENNEDY:  Maybe I can --

8  MR. TZUR:  Hold on.  And, three, that the numbers are

9  just wrong.  Mr. Kennedy is getting this 561 meters on page 1

11:45:55  10  from Exhibit 7 from the report that is shown at page 2 of that

11  exhibit, and the technology is just different.

12  I'm reading from the case agent report:  Based on

13  previous surveillance conducted as part of this investigation,

14  agents determined that there were three areas within a

11:46:15  15  561-meter range indicated by the ping for 2832.

16  Ping in that context, Your Honor, refers to the GPS

17  location information provided by Mr. Sanchez-Jara's phone.

18  That is different technology and a different authorization

19  provided by this warrant.  That is the phone company providing

11:46:37  20  information about the GPS location of the phone.  And the

21  561 meters is the accuracy of that GPS location for any time

22  that the company is providing that information from the phone.

23  That's not the cell phone simulator technology that the law

24  enforcement officers were using.  So Exhibit 7 just has

11:46:55  25  nothing to do with what we are arguing about in this motion,

1    motion 77.  But the rest of it I think is fine, Your Honor.

2              THE COURT:  I remind the parties to slow down for the

3    interpreter and the court reporter.

4              MR. TZUR:  I'm sorry.  I talk fast.

11:47:23    5        THE COURT:  All right.  So, Mr. Tzur, what's your

6    suggestion on how to handle Exhibit No. 7?  Am I being asked

7    to decide which lawyer to believe here?

8              MR. KENNEDY:  May I?

9              THE COURT:  Yes, Mr. Kennedy.

11:47:34    10       MR. KENNEDY:  It's not a matter of which lawyer to

11   believe because in a way, neither one of us is -- the

12   question, as I see it, is should it be accepted as evidence.

13   And what I'm trying to do is show the strength of the cell

14   phone simulator, the effect on the Fourth Amendment rights of

11:47:56   15   Mr. Sanchez-Jara.  I understand that nobody else has -- that

16   nobody else's -- has standing in this case, I guess.  Or

17   certainly isn't in this case.  And I'm not arguing that.  I'm

18   trying to show how powerful this tool is for locating

19   something.  It can find something that's within a third-mile

11:48:21   20   radius of where the simulator is apparently.

21             MR. TZUR:  And, again, Your Honor, that goes to the

22   use of the technology or the -- how the technology works,

23   which, again, the government's position is --

24             MR. KENNEDY:  Yes.

11:48:34   25   MR. TZUR:  -- that doesn't matter.  What matters is

1   the stipulation that the government provided, that the

2   technology was used to find Mr. Sanchez-Jara's phone on that

3   day.

4           THE COURT: So, Mr. Tzur, you're asking that 7 not be

5   allowed; that it be stricken?

6           MR. TZUR: I think that it shouldn't be allowed, as

7   being irrelevant and not accurate. But Your Honor is already

8   considering the document by looking at it. It's essentially a

9   bench trial here. So I don't think that that document is

10   going to make a difference in Your Honor's assessment of the

11   facts of this case. So if Your Honor is inclined to accept it

12   and give the defense the benefit of the doubt, I just ask Your

13   Honor to give it the appropriate weight it deserves.

14           THE COURT: Okay. So that's what we'll do. Without

15   objection, all of the exhibits are admitted. And, again, the

16   photographs are irrelevant. They are attached as No. 10. But

17   there's no question that they don't -- they're not relevant

18   today. So, Mr. Kennedy, why don't we withdraw No. 10 today.

19           MR. KENNEDY: Sure, Your Honor. I -- that's --

20           THE COURT: All right. And with that in mind then,

21   sir, I am going to deny, Mr. Kennedy, your request to continue

22   this motion to call witnesses; and I'm going to ask the

23   parties to argue this motion. Mr. Kennedy, starting with you,

24   sir.

25           MR. KENNEDY: Okay. And just -- also I wanted to

1    ask, are these -- are these Exhibits 1 through 9 admitted into

2    evidence except for 7, which is taken for what it's worth?

3              THE COURT:  Yes.

4              MR. KENNEDY:  Thank you.

11:50:24    5    THE COURT:  And 7 will be considered as demonstrative

6    evidence with -- and the government will argue that it is not

7    relevant and that it should not be given any weight.  You will

8    argue that it is relevant and persuasive.

9              MR. KENNEDY:  Yes.

11:50:46   10    THE COURT:  All right.  Go ahead.

11             MR. KENNEDY:  The Fourth Amendment guarantees a

12   degree of privacy.  It gives individuals a reasonable

13   expectation of privacy in their homes.  And it provides the

14   standard for -- when that reasonable expectation of privacy is

11:51:08   15   going to be taken away, it provides the standard that the

16   government must meet or that a warrant must meet to allow for

17   such a deprivation of privacy.

18             And that standard is that -- is stated in Gates, that

19   there has to be substantial basis for concluding the search

11:51:37   20   would uncover evidence of a crime.

21             And the other description of the test is that

22   probable cause exists for a search under the Fourth Amendment

23   of a house, a residence, when a reasonably prudent person

24   believes that a search will uncover evidence of a crime.

11:51:58   25   It's -- this goes -- is a higher burden.  And that case, by

1    the way, is U.S. v. Peck, citing Gates.

2         Here, it's not that -- the contrast in those, that

3    instead of what a government entity believes, it has to be

4    what a reasonably prudent person would believe.

5         Instead of simply relevant and material to an ongoing

6    criminal investigation, it has to be -- uncover evidence of a

7    crime.  These are basic protections.  Kyllo addressed that

8    protection when someone decided that they could determine

9    whether marijuana was being grown in a house without actually

10   going inside by measuring the heat on the side of a wall.  And

11   the Supreme Court said, no, you can't do that because you're

12   using technology to invade the reasonable expectation of

13   privacy.

14        I sort of misspoke a while ago when I talked about

15   the cell phone simulator would send a signal in and then the

16   cell phone would emit a signal out.  That suggests there has

17   to be a physical intrusion.  I don't know if electrons count

18   as a physical intrusion.  But the physical intrusion rule

19   isn't the -- isn't really what's used in these technology

20   cases.  It's the reasonable expectation of privacy rule.

21        And Mr. Sanchez, when he's in his home, he has a

22   reasonable expectation of privacy that the government will not

23   be taking information out of that house.  And everything in

24   the house is part of what he is entitled to have an

25   expectation of privacy in.  It's not just when he takes a

1    bath, what he eats for dinner.  It's everything in the house.

2          And when the government uses the wrong standard for

3    getting a warrant, that results in an illegal warrant.  And I

4    shouldn't say it's the wrong standard.  The government used

11:54:13  5    the correct standard for your typical ping order.  And that's

6    what the statute provides.  But if that -- and, interestingly,

7    if that phone had been located in a rest stop on the highway,

8    it would have been okay.  And there's a Seventh Circuit case

9    that talks about that, where a trucker was engaged in drug

11:54:38  10   sales and he was tracked with a cell phone simulator to that

11   location and got arrested.  He was in a public place, so the

12   Seventh Circuit was never confronted with this problem of the

13   search of a home.

14         This case is the first one that I could find --

11:55:00  15   Mr. Sanchez's case is the first one I could find where the

16   Court is being asked to decide whether going into a home to

17   obtain a location using a cell phone simulator is a Fourth

18   Amendment violation.

19         Now, I would -- this seems very consistent -- what

11:55:28  20   happened in this case seems very consistent with Kyllo.

21         THE COURT:  Kyllo, where there was no warrant?

22         MR. KENNEDY:  That -- yes, that is correct.  I mean,

23   I agree.

24         THE COURT:  And where a specific house was being

11:55:47  25   targeted, right?  In other words, Mr. Kennedy, what should the

1    government have done here?

2              MR. KENNEDY:  It should have --

3              THE COURT:  I mean, in Lambis, the judge in Lambis

4    stated that the government could have gotten a warrant.  And

11:55:59    5    he believed, I guess in dicta, that they would have been

6    granted that warrant.

7              What should the government have done here?  They

8    didn't have the address.

9              MR. KENNEDY:  The government should have gotten the

11:56:11    10    warrant --

11              THE COURT:  For what?

12              MR. KENNEDY:  -- based upon the reasonable man

13    standard -- reasonable person standard -- and averring that

14    evidence of a crime is probable cause that evidence of a crime

11:56:24    15    would be found within the home.

16              THE COURT:  Which home?

17              MR. KENNEDY:  Now, that -- I've actually thought

18    about that.  Because if they don't know which home has the

19    cell phone, they don't know which home they're going to

11:56:38    20    search.  But I don't think that is an excuse because when you

21    look at a case -- the search and seizure cases, one has to

22    respect the reasonable expectation of privacy.  I imagine they

23    can adjust it around, that the affidavit can state that

24    there's probable cause to believe that use of a cell phone

11:57:13    25    simulator -- that the finding of the cell phone simulator will

1    be evidence of a crime, not just evidence of a criminal

2    investigation.

3            One thing that has to be remembered is evidence for a

4    criminal investigation can include stuff that is entirely

11:57:31    5    legal and proper.  It can include, say, dirty clothes.

6    Circumstances -- things that surround some offense that the

7    government feels will be contributing to their being able to

8    solve the crime can be a completely -- it can be a completely

9    innocent person who has some evidence that will lead to a

11:57:55   10    solution to the crime, maybe an accountant's books and records

11    for a crooked car dealer where the accountant doesn't know

12    there's anything wrong with them.

13            I don't think that -- I believe that the Fourth

14    Amendment guarantee of the standard for a search can be

11:58:23   15    maintained even where the specific house that's being searched

16    is not known.  It's certainly a twist, but it still puts the

17    burden where it belongs before a house gets searched.  There

18    is a lot of belief that -- and, by the way, the problem is

19    that the Fourth Amendment was in answer to general warrants,

11:58:50   20    which would allow soldiers to look for contraband anyplace.

21            So the limitation that it has to be for reasonable --

22    a reasonable person's expectation of evidence of a crime

23    affords a protection even if the exact address of the house

24    can't be found.

11:59:15   25            The Lambis case -- I think the Lambis case is

1    consistent with this argument.

2         And the other thing I wanted to mention was that on

3    the idea of, well, it's an innocent mistake.  The problem is

4    that it's not a valid warrant to start with at all because it

11:59:59    5    didn't meet the probable cause requirement for the Fourth

6    Amendment.

7         If there's some defect, the exceptions that allow

8    good faith, we made a mistake, but those are limited to more

9    toward details about the specific items that led to issuance

12:00:20    10    of the warrant for a search; and that would be a search of a

11    home.  So it would be a -- where the warrant is seeking to do

12    a search on its face in compliance with the Fourth Amendment

13    guarantee that the reasonable expectation of privacy will be

14    maintained and there's a mistake though as to how old the

12:00:44    15    marijuana is, how many pounds of marijuana are there or aren't

16    there; and that's the good faith mistake.  That's the good

17    faith exception.  Here, we don't have that.

18         And with that, I really think that that and the

19    Lambis case, which has addressed this issue and is, I think,

12:01:06    20    instructive, I don't believe there's much else I can say.

21         THE COURT:  Mr. Kennedy, let me turn your attention

22    to the application.  I forget which exhibit you attached it

23    as.  But on page 13 of the application -- it's your

24    Exhibit 1 -- paragraph 30, the caption is "request for

12:01:44    25    authorization to use a cell site simulator."

1      MR. KENNEDY:  Yes.

2      THE COURT:  And it says, pursuant to Rule 41.  But

3  then it goes on on the next page -- and this is just in the

4  request; this is just the application -- that this Court's

12:02:05  5  order authorize Homeland Security Investigations and other

6  authorized law enforcement officers to employ electronic

7  evidence techniques, including a cell site simulator described

8  in the accompanying affidavit, including in private places, to

9  capture and analyze signals emitted by the subject phones for

12:02:27  10  a period of 30 days.

11      And, by the way, this all happens about two or three

12  days after the order is signed, correct?  I think it's three

13  days later.

14      MR. TZUR:  Three days.

12:02:40  15      THE COURT:  Mr. Kennedy, what about that, sir, do you

16  want to address that?

17      MR. KENNEDY:  Sure.

18      THE COURT:  Isn't this what the judge in Lambis is

19  saying the government should do, what they've done here?

12:02:55  20      MR. KENNEDY:  No.  The first thing I would point

21  out -- well, one thing I would point out is that the -- oh,

22  the Court mentions Rule 41.  Rule 41 is simply a procedural

23  rule.  It doesn't set out a standard for the warrant at all.

24  It says who has the authority to issue a warrant, who can ask

12:03:22  25  for -- who has the authority to ask for a warrant.  It has

1    basically no bearing on the argument of whether a warrant

2    issued for a cell phone search or cell phone records based on

3    this possible evidence showing up is the same as a warrant

4    issued in violation of the reasonable -- that will result in a

12:03:52    5    violation of the reasonable expectation of privacy.  I say

6    violation.  It is a violation of the reasonable expectation of

7    privacy.  It's one allowed by law if there's probable cause.

8          The other thing is, as far as in private place, my

9    first observation is, why in the world doesn't it say in

12:04:15    10    someone's home.  The other thing is private place can be

11    anything.  It can be a toilet.  It can be -- one could argue

12    it could be a garage, which is part of the curtilage anyway.

13    I don't see that private place is a sufficient description of

14    what is going -- use is going to be made of that cell phone

12:04:54    15    simulator.  And that is really all I can say.

16          THE COURT:  All right.  Mr. Tzur.

17          MR. TZUR:  Thank you, Judge.

18          Judge, I think you understand this.  I think you

19    understand what the issues are.  The government absolutely got

12:05:06    20    a warrant pursuant to the Fourth Amendment to conduct the

21    search of Mr. Sanchez-Jara's phone using a cell site simulator

22    that they conducted in July of 2015.

23          Your Honor is pointing to the exact right spot,

24    paragraph 30.  The government is asking for this authority

12:05:23    25    pursuant to Rule 41.  And I even direct your attention, Your

1    Honor, to the issuing judge's order on page 3 of the order

2    where the issuing judge found -- made a finding that pursuant

3    to 2703(c)(1)(A) and Rule 41, the government has established

4    probable cause to believe that information concerning the

12:05:43    5    defendant's phone at times determined will constitute or lead

6    to evidence of the subject offenses.  That's a finding made by

7    the issuing judge in this case.

8         I think -- a few things.  One, I don't think

9    Mr. Kennedy is saying that there was no document presented

12:06:01    10    here.  He recognizes that there was a document, that is the

11    ping application, and that the chief judge signed an order

12    pursuant to that application.

13         The only question then is whether or not that

14    application spells out in the affidavit section sufficient

12:06:16    15    probable cause for the warrant to be upheld.

16         Your Honor knows from the government's filings that

17    at this stage, that question, Your Honor has to give the

18    issuing judge pretty significant deference pursuant to a

19    couple of Supreme Court cases that discuss this issue.

12:06:36    20         I want to make a quick point, Your Honor.  I'm not

21    asking Your Honor to give deference here simply because the

22    issuing judge happened to be the chief judge.  I don't think

23    it would matter who signed the warrant, who signed the order.

24    What matters is that there was an order signed for a Fourth

12:06:49    25    Amendment warrant, and that -- so now at this point, Your

1    Honor has to consider the probable cause finding with

2    deference, according to the Supreme Court.

3         I think what Mr. Kennedy is getting stuck on is this

4    distinction between Rule -- Section 2703 and Rule 41.  And

12:07:09    5    both of them are instructive, that the government is

6    absolutely in the right here.  I actually have copies for Your

7    Honor and for Mr. Kennedy of both 2703 and Rule 41 that I can

8    hand up.

9      (Tendered.)

12:07:25    10        MR. TZUR:  And I want to point out a few things first

11   off in Rule 41, Your Honor.  There's this question Your Honor

12   asked about not knowing the place to be searched, not knowing

13   which house to be searched.  So the search that was considered

14   here is effectively a search using a tracking device, some

12:07:43    15   sort of location device.  If you go to Rule 41(b)(4), that

16   authorizes a judge to issue a warrant to track the movement of

17   a person or property located within the District, outside the

18   District, or both.  So not having the location of the specific

19   house doesn't matter.  It's still absolutely a warrant that

12:08:07    20   the government was able to get and is still absolutely a

21   warrant that falls under the Fourth Amendment and Rule 41.

22        Second, Your Honor, I turn you to Rule 41(d)(1).

23   Mr. Kennedy keeps arguing that Rule 41 is nothing more than a

24   procedural rule and has no substance to it.  Rule 41(d)

12:08:26    25   actually identifies that warrants issued pursuant to this rule

1    are to be governed by Fourth Amendment probable cause.

2         According to (d)(1), a magistrate judge or, if

3    authorized by Rule 41, a state court judge must issue the

4    warrant if there is probable cause to search for and seize

5    property or to install and use a tracking device.

6         So Rule 41 contemplates the probable cause standard.

7    It's the one and only probable cause standard.  There aren't

8    multiple probable cause standards.  So under Rule 41, the very

9    rule that the government applied for in its application, the

10   very rule that the issuing judge found was met in its order,

11   it is abiding by the probable cause standard.

12        Second, turning to rule 2703, Mr. Kennedy cited and

13   keeps getting hung up on a distinction between 2703(c) and

14   2703(d).  Mr. Kennedy is right that there are -- there is a

15   standard in rule 2703 that courts have found is lower than the

16   probable cause standard.  That's a standard for a court order

17   issued under 2703(d).  The problem for Mr. Kennedy's argument

18   is that the government didn't seek the -- didn't -- let me

19   restate that.  Didn't provide the application and didn't ask

20   the judge to enter an order for the -- either the ping or the

21   cell site simulator relying on the lower standard in 2703(d).

22        I turn Your Honor to a couple of points in the

23   application.  Your Honor had it right at page 13 of the

24   application.  And I actually draw your attention to page 12 as

25   well, which talks about the government's request for gathering

1    GPS location data from that same phone, the ping part of the

2    application.  And it discusses how the government is

3    requesting this authority pursuant to Title 18 U.S. Code

4    Section 2703(c)(1)(A) and Rule 41.  And that's the language

5    that's mirrored in the issuing judge's order, saying that the

6    issuing judge found probable cause under those two statutes.

7         2703(c)(1)(A) is a reference to Rule 41 and the

8    probable cause standard.  By distinction 2703(c)(1)(B) --

9         THE COURT:  D?

10        MR. TZUR:  (B), (c)(1)(B).  So the very next

11   subsection in 2703(c)(1).

12        THE COURT:  Right.

13        MR. TZUR:  Authorizes an order pursuant to that lower

14   standard set out in 2703(d), the standard that Mr. Kennedy

15   keeps relying on.

16        So Mr. Kennedy is right that there is this lower

17   standard that's available in rule -- in Section 2703, excuse

18   me -- but that is not -- that lower standard is not the

19   standard on which the government relied in getting its

20   warrant, and it's not the standard in -- on which the issuing

21   judge made its probable cause finding.  It made a finding of

22   probable cause, the issuing judge did, that's consistent with

23   Rule 41 and consistent with the Fourth Amendment.

24        And that finding is absolutely appropriate under

25   the -- especially under the deferential standard that Your

1    Honor has to follow in light of the facts that were laid out

2    in the affidavit in support of -- in support of this warrant.

3         The affidavit laid out the ongoing investigation,

4    laid out the intercepted communications between drug dealers

5    in other parts of the country, laid out the special agent's

6    interpretation of what some of the language was that was being

7    used in those intercepted communications, laid out the special

8    agent's training and experience for having some basis for the

9    chief judge to understand why it is that he could accept as

10   true those interpretations that the agent had provided, and

11   laid out other grounds in the affidavit to support the

12   probable cause finding.

13        One thing that is absent in all of Mr. Kennedy's

14   filings is an analysis of the probable cause in the section of

15   the affidavit to say whether or not probable cause was

16   actually met.  It absolutely was met in this case.  And it's a

17   finding that the issuing judge made.  It's a finding that was

18   consistent with Rule 41, consistent with the Fourth Amendment

19   probable cause standard, and had nothing to do with this

20   2703(d) standard that Mr. Kennedy keeps relying on.

21        So based on all of that, Your Honor, this is an

22   absolutely valid warrant to -- for allowing the agents to

23   conduct the search that they conducted.

24        And at that level, in light of that argument, even if

25   Your Honor were to find that I'm wrong, that there was

1    insufficient probable cause even under this deferential

2    standard, the agents, given that argument, had -- had a good

3    faith basis to rely on the issuance of the warrant to conduct

4    the search that they conducted.  And the good faith exception

5    in that light does apply to solidify what the agents did in

6    this case.

7         But I don't want to rely on good faith.  I do believe

8    very strongly that the probable cause affidavit did just that,

9    make a -- make a showing of probable cause, and that the

10   issuing judge made a finding of probable cause that can't be

11   overcome on this deferential standard.

12        THE COURT:  Mr. Tzur, two questions.  So you believe

13   that the search that was conducted in this case was authorized

14   by the warrant?

15        MR. TZUR:  Yes.

16        THE COURT:  So I'm going to ask you to indulge me and

17   point out which section of the warrant.  And then after that,

18   sir, I'm going to ask you about Lambis.  I understand that it

19   is only persuasive here, but I'm going to ask you whether your

20   position is that the judge is wrong there or whether that case

21   is distinguishable from this case based upon what actually

22   happened in that case and what the warrant was in that case,

23   if you know.

24        MR. TZUR:  I don't know the warrant in the Lambis

25   case.  But I do know that the warrant here satisfied the

1    Fourth Amendment/Rule 41 probable cause requirement.  And I

2    will turn you, Your Honor, to the warrant itself.  So turning

3    to the warrant and order, if you look at the document, the

4    bottom right of the document, the first page says pens,

5    underscore, 001-000031.  That's the first page of the warrant

6    and order.

7         Page 3 of that warrant and order, third paragraph is

8    a finding by the issuing judge that the government has

9    satisfied the probable cause requirement.  Period, full stop.

10   That is -- that paragraph says that the government has made a

11   Fourth Amendment probable cause showing and has satisfied the

12   requirement.

13        I then direct your attention, Your Honor, to page 5,

14   the carryover paragraph from page 5 to 6.  This is the

15   paragraph that specifically authorizes the search that was

16   conducted by law enforcement officers to find Sanchez-Jara's

17   phone using cell site simulator technology and electronic

18   investigative techniques.

19        The issuing judge found -- ordered that pursuant to

20   the pen trap statute and Rule 41 -- again, a citation to the

21   probable cause standard -- officers of HSI and other

22   authorized law enforcement officers may employ these

23   electronic investigative techniques for up to 30 days,

24   including in private places.

25        THE COURT:  I'm sorry.  Where -- you lost me.  I

1    thought we were on page 5.

2         MR. TZUR:  Bottom of page 5, carrying over to the top

3    of page 6.

4         THE COURT:  Okay.

12:16:52   5    THE INTERPRETER:  Excuse me, Your Honor.  The

6    interpreters would ask that people read a little bit slower.

7         MR. TZUR:  I'm sorry.

8         THE INTERPRETER:  Thank you.

9         THE COURT:  Thank you.

12:17:00   10   MR. TZUR:  So I'll start again.

11        Beginning at the bottom of page 5, the issuing judge

12   ordered, pursuant to, in part, Rule 41 -- so, again, the

13   probable cause Fourth Amendment standard -- that officers/

14   employees of HIS and other law enforcement officers could use

12:17:14   15   these electronic investigative techniques for up to 30 days

16   and including in private places to capture and analyze signals

17   emitted by phones, including the defendant's phone.

18        There were two phones at issue in this application.

19   One has nothing to do with the case that's in front of Your

12:17:33   20   Honor.  The other is the defendant's phone.

21        And including in response to signals sent by law

22   enforcement officers, meaning that law enforcement officers

23   could use this technology, make an intrusion with he electrons

24   or whatever the technology is, whatever radio waves are being

12:17:52   25   used, to find the defendant's phone, wherever it is, including

1   in private places, and have signals from the defendant's phone

2   emitted back to pinpoint that phone.  That is exactly what

3   this warrant and order authorized.

4         And what the government did is no more and no less

12:18:12   5   than this.  The government -- the finding -- the return is

6   that the government found the defendant's phone in a specific

7   location at a specific time on July 27th, 2015.  And that was

8   the extent of the use of this technology.

9         THE COURT:  And, Mr. Tzur, regarding Lambis, in that

12:18:42   10   case, the judge made the distinction between the request for

11   the -- I believe the initials he used were the CS -- let me

12   find it.

13    (Brief pause.)

14         THE COURT:  The CSLI, the cell --

12:19:24   15         MR. TZUR:  Cell site location information.

16         THE INTERPRETER:  I'm sorry, Your Honor.  The

17   interpreter needs the parties to speak louder.  Could you

18   possibly use your microphone.

19         MR. TZUR:  Of course.

12:19:42   20         THE COURT:  Lambis is a case where there was a

21   warrant issued.

22         MR. TZUR:  Uh-huh.

23         THE COURT:  Do you want to address again whether the

24   judge is just wrong and that case is exactly this case or

12:19:58   25   whether it's distinguishable.  And you've already told us that

1    you haven't actually seen the warrant in that case.

2        MR. TZUR:  I have not.  May I have a moment just to

3    go through this case again?  I didn't review it yesterday.  I

4    reviewed it some time ago when this filing was initially made.

5        THE COURT:  Sure.

6        (Brief pause.)

7        MR. TZUR:  Your Honor, I'm going to speculate,

8    without having the benefit of the warrant in the Lambis case

9    in front of me.  My reading of the case is that the warrant

10   that was obtained in the Lambis case did not specifically

11   request authority to use the -- the cell phone simulator

12   technology that was at issue here.

13       When I see the phrase "cell site location," cell site

14   to me has a particular meaning regarding the recovery of

15   information from cell phone companies about the location of

16   the tower, the cell phone tower that was used by a particular

17   cell phone to make and place a particular call or text

18   message.

19       So my understanding -- my reading of this case is

20   that law enforcement officers got authority to get the GPS

21   location information from the phone and to get historical

22   records of the locations of the towers that the cell phone

23   connected to for various prior telephone calls; but that the

24   government did not get specific authority to use a cell

25   phone -- to use electronic investigative techniques like the

1 cell phone simulator that was used in this case.  And so if

2 I'm reading this case correctly, the Lambis case is absolutely

3 distinguishable from what we have in this case.

4    THE COURT:  I'm going to --

5    MR. TZUR:  Sorry for the misunderstanding.

6    THE COURT:  -- pass to the parties -- I only have one

7 copy.  This is what I believe is the warrant and order for

8 cell phone location information and pen register information

9 and for sealing and non-disclosure.  This is a four-page

10 document signed by a magistrate judge in the Southern District

11 of New York on August 18th.  I believe this is the warrant and

12 order in question.  I'm going to pass it up to the parties.

13  (Tendered.)

14    THE COURT:  And give the parties enough time to

15 consider it.

16  (Brief pause.)

17    MR. TZUR:  Yeah, I -- Your Honor, page 6 of the

18 court's opinion gets to the point I was making.  The paragraph

19 that carries over from page 5 to page 6, that last line says:

20 The fact that the government previously demonstrated probable

21 cause and obtained a warrant for CSLI from Lambis's cell phone

22 suggests strongly that the government could have obtained the

23 warrant to use a cell site simulator if it had wished to do

24 so.

25    That is -- that is what the government obtained here.

1       So I'm right about the Lambis case, Your Honor.  And looking

2       at the warrant that Your Honor provided, it's consistent with

3       my reading.  At no point did the government ask for and at no

4       point did the issuing judge order -- or warrant -- the use of

5       the location finding technology that was specifically

6       requested and provided for here, the cell site location

7       information.

8            I'm sorry.  I'm getting terminology confusing.  But

9       it's the cell site simulator that Mr. Kennedy is arguing

10      about.  The government in Lambis didn't ask for authority to

11      be able to use that technology.  So the case is

12      distinguishable.  The government did exactly what -- on

13      page 6, like Your Honor said -- what it thinks that the

14      government could have done to overcome the issue that was at

15      issue in Lambis.

16           THE COURT:  And, Mr. Tzur, I ask you sort of what I

17      asked Mr. Kennedy.  What else could the government have done

18      here?

19           MR. TZUR:  Nothing.  That's just it.  The government

20      got the warrant that was appropriate to get to be able to

21      conduct the search that it conducted.

22           THE COURT:  So there's no point in this investigation

23      where the government could have taken a break, gone back to

24      that judge or a different judge and said, now we have a house,

25      because they had already used the technology to get to that

1     house, correct?

2           MR. TZUR: They had found the phone within a house.

3     What the -- I suppose what law enforcement could have done at

4     that point is could have asked for an arrest warrant for the

12:28:11   5     holder of the phone. I suppose it could have asked for a

6     search warrant at some point for the house. But, again, that

7     has nothing to do with what's at issue in this case. And that

8     is all resolved by the consents that both Individual B and

9     Mr. Sanchez provided.

12:28:29  10           THE COURT: So regarding the use of this technology

11     in this motion, your sense is that the problem is inherent in

12     the technology.

13           MR. TZUR: Well, I don't see --

14           THE COURT: They can't ask for a warrant to search a

12:28:42  15     house because they don't know which house they want to search

16     until they use the technology.

17           MR. TZUR: And I see the problem resolved by Rule 41,

18     by the provisions that I pointed Your Honor to. 41(b) -- what

19     was it -- Rule 41(b)(4) that specifically authorizes the use

12:29:04  20     of tracking devices to -- location technology to find a person

21     or to find a -- some property; and Rule 41(d)(1), which

22     specifically authorizes the issuing judges to grant warrants

23     to get that tracking location information, which is separate

24     and apart from getting a warrant to search a place and to

12:29:33  25     obtain physical things from that place.

1    So I -- to the extent that there was a house that was

2    identified after, there's no need for the government to go

3    back and get a secondary warrant once that house is identified

4    because Rule 41 covers the use of these tracking devices, use

12:29:51  5    of tracking technology to find people and to find property.

6    So there is -- that issue is already covered.  There is no

7    issue there.

8    I'd also add, Your Honor, that there wouldn't -- it

9    would have been nothing more than redundant to go back and get

12:30:07  10    a warrant for the specific property.  The government didn't

11    conduct that -- an additional search using this cell phone

12    simulator.  After it found the location in the house at

13    7:55 a.m., the technology was turned off; and that was the

14    extent of the use, according to the reports that were provided

12:30:24  15    to Mr. Kennedy.  So even if it had gotten another warrant,

16    that warrant wouldn't be doing anything because there wasn't a

17    subsequent search using that technology that was conducted by

18    law enforcement.

19    THE COURT:  And as to Mr. Kennedy's argument

12:30:40  20    regarding the term "private places," any reason to believe

21    that the judge was thinking of everything except a residence?

22    MR. TZUR:  No, absolutely not.  The order

23    specifically authorized private places to be searched using

24    this technology in a very limited way to find this particular

12:31:00  25    phone.  That is totally consistent with the Fourth Amendment

1     and totally consistent with Rule 41's -- not expansion of the

2     Fourth Amendment but use of the Fourth Amendment standards for

3     things like tracking devices and tracking technology.  So, no.

4              THE COURT:  All right.

5              Mr. Kennedy.

6              MR. KENNEDY:  I feel that the government is arguing

7     that black is white in this case.

8              On this Rule 41 search and seizure, first of all,

9     it's in the Rules of Procedure.  It's not something that gives

10    substantive rights to people.

11             The other thing is, I do not see any reference to the

12    Fourth Amendment.  I don't think there's one in here.

13             It is a procedural rule.  It uses the term "probable

14    cause."  But what the government absolutely refuses to believe

15    is there's such a thing as different standards for probable

16    cause.  The cell phone standard is one thing.  It is quite

17    another to have probable cause to search somebody's home.  The

18    Court said, well, do you think the judge was thinking that --

19    about the private places.  And I have to confess, I forget

20    exactly how the Court phrased it.  But there's nothing in this

21    warrant to indicate the judge was thinking of houses.

22    Presumably the government drafted the application, the

23    affidavit, and the order.  Why didn't they put in "houses"?

24    Why didn't they put in "residences"?

25             It is no bar to reliance on the Fourth Amendment

1   expectation of privacy to say, well, we don't know where the

2   house would be.

3           The house can also always be specified as house A,

4   unknown house.  How many lawsuits do we see that says United

12:33:18   5   States v. Unknown this or that or Individual A or Individual

6   B.  The warrant could specify, you've got the right to search

7   house No. A, and that's the one that's got the cell phone in

8   it.

9           As far as what else could the government have done,

12:33:40   10   there was stuff they could have done.  When you -- when a

11   person -- first of all, looking at the affidavit, I'm not

12   looking at -- I myself, the lawyer -- am not looking at a full

13   affidavit.  There's a lot of mine that's blacked out.  I have

14   no idea what's in there.  I have bits and pieces of

12:34:00   15   conversations.  They're fairly meaningless.  The part of those

16   conversations that's really damning is the part where the

17   agent interprets the conversation and says what the agent

18   thinks they are saying.  That's not evidence.  That's the

19   agent's supposition.

12:34:18   20           The probable cause grounds stated in this statutory

21   request under the cell phone statute would never pass muster

22   for a search of somebody's home where there's got to be

23   evidence that's reasonable -- that would make a reasonable

24   person believe there's evidence of a crime.

12:34:42   25           And they recognize -- the government itself

1    recognizes in this application that it makes where it points

2    out to the Court that they are only seeking this under the

3    probable cause for a phone, for a wiretap.  They don't say,

4    we're seeking this under Fourth Amendment.  They say, we're

12:35:01  5    seeking it under the statutory power.  And the reason they

6    make that point is they know they can't show probable cause

7    for Fourth Amendment residence searches.

8        There's another case which should be mentioned, which

9    is United States v. Jones, where the government physically

12:35:27  10   occupied private property to put a tracking device on

11   somebody's Jeep.  They did it a day after the warrant had

12   expired, and it was considered a warrantless search to place

13   that GPS unit on the Jeep because they entered private

14   property, because they violated the Fourth Amendment.

12:35:56  15       It's a whole different ball of wax when it's a public

16   place as compared to a private place.  A private place has all

17   the guarantees of Fourth Amendment search and seizure law and

18   Fourth Amendment protection.

19       Searching for cell phones in public places is allowed

12:36:29  20   under the statute, 3703.  But that's a whole different kettle

21   of fish.  That's out in a public area where there is no

22   expectation of privacy, and there's no expectation because the

23   cell phones are sending those signals voluntarily.  They

24   maintain constant contact with the towers.  And that's why the

12:36:55  25   government can go track them, as long as they're in public

1    places.  But when they get into residences, it's got to be

2    probable cause based upon the belief of a reasonable person

3    that it would lead to evidence of a crime.

4              And to carry this a little further, suppose the

12:37:17   5    government wanted to search a house for drugs, you know.  They

6    can't go to the judge and say, Judge, I want to search this

7    house for drugs under the standard of probable cause stated in

8    3703.  I can't tell you, Judge, that there's probable cause

9    that a reasonable person would believe there's evidence of a

12:37:38   10   crime in this house.  The government can't go and say, well,

11   I'm not going to meet that Fourth Amendment standard; I'm

12   going to meet the 3703.  I'm going to say, Judge, I want you

13   to issue a warrant for search of this house for cocaine based

14   on my agent's belief that there might be evidence leading to

12:38:01   15   evidence of a crime, or however it's phrased.  No reasonable

16   man standard, just belief of the agent.  Well, agents believe

17   everybody is doing something illegal.  There's no protection

18   in that.  And no court is going to issue a warrant for the

19   agents to go, enter that house on a probable cause standard

12:38:26   20   of, we believe that there's evidence that may help our

21   investigation.  I regret I can't remember the exact phrasing,

22   but we've said it over quite a few times.  And I think that's

23   the most solid analogy or solid analysis I can give the Court.

24             It's just -- the government's argument that probable

12:38:53   25   cause is met because the words "probable cause" show up in the

1    3703 statute is just ducking the entire issue.  It's arguing

2    black is white.  It's a willful ignoring of what the statute

3    says and of what the Fourth Amendment says and of Fourth

4    Amendment law.

12:39:15    5        And I just can't say anything else, Your Honor.

6    That's -- that's it as far as what I can say to the Court.

7    And I've cited cases in my briefs and all that.  But as far as

8    oral argument, that's really all I can say.

9            THE COURT:  All right.  Thank you, Mr. Kennedy.

12:39:32    10           MR. KENNEDY:  Oh, Your Honor, should we -- I believe

11   we -- do you want this back?

12           THE COURT:  Sure.  Do you want to address that, sir?

13   By "that" I mean, the document that I tendered to the parties

14   which I believe is the warrant and order discussed in the

12:39:49    15   Lambis case.  And I'll figure out how to identify it by its

16   docket number when I get it back.

17           MR. KENNEDY:  I thought it was sealed, Your Honor.

18   That's why I was --

19           THE COURT:  Yes.  I will take that back.  But I'll

12:40:06    20   give you an opportunity to address that if you want to.

21           MR. KENNEDY:  Thank you.

22      (Brief pause.)

23           MR. KENNEDY:  Oh, well, in Lambis this is -- it's

24   a -- it's the probable cause based upon the cell phone

12:40:35    25   standard stated in paragraph 5 of this order, 2703.  The

 1      standard is that the government's application sets forth

 2      specific and articulable facts that are reasonable grounds to

 3      believe that the historical location information for the

 4      target cell phone specified below is relevant and material to

12:40:58    5      an ongoing criminal investigation.  So that's the standard

 6      that the agents used and obtained the warrant to intercept

 7      some cell phone signals.

 8              Under that standard, they tried -- they used the cell

 9      phone simulator also.  That resulted in reversal of their

12:41:26   10      action of using the cell phone simulator as unconstitutional.

11      They should have gone and said, Judge, not only do we want

12      this 2703, we want a Fourth Amendment search of house No. XYZ;

13      and we have probable cause, and it is based upon what -- that

14      a reasonable man would find that there is probable cause to

12:41:53   15      believe there's evidence of a crime in this house.  A totally

16      different standard.

17              They didn't do that.  The stuff against Lambis was

18      thrown out.  And there wasn't any analysis -- well, maybe

19      there was analysis of, oh, this was innocent error.  In

12:42:11   20      Lambis, they set out a four-factor test.  And, you know,

21      Judge, I hate to say it, I put it in the brief and without

22      reviewing Lambis, I simply am unable to remember these four

23      factors.

24              THE COURT:  Okay.  Thank you, Mr. Kennedy.

12:42:43   25              MR. KENNEDY:  Thank you, Your Honor.

1          THE COURT:  Thank you.

2          I have considered the filings and the authority cited

3   in those filings and the arguments of counsel.  And it's my

4   finding that pursuant to Kyllo, that the government did need a

5   warrant to conduct the electronic search that it conducted on

6   the date in question.  It's my finding that the government did

7   obtain a warrant.  It's my finding that the warrant that they

8   obtained was valid and that it contemplated the sort of search

9   that was conducted here and authorized the search that was

10  conducted here.

11         Therefore, this motion -- not any other motion -- but

12  this motion to suppress evidence that was obtained from the

13  use of the cell phone simulator or evidence that was obtained

14  electronically that morning is going to be denied.

15         Regarding the other motions, I will say that I

16  haven't heard evidence yet tying the cell phone specifically

17  to Mr. Sanchez-Jara as opposed to tying the cell phone to the

18  house.  I assume that the government had such evidence, but I

19  haven't heard it.  But assuming the government can do that,

20  tie that cell phone -- tie El Boys, E-l, B-o-y-s -- to

21  Mr. Sanchez-Jara, then I'm inclined to agree with the

22  government that, at that point, the government has at least

23  enough for a Terry stop.

24         Again, that's just to give the parties a fair warning

25  in terms of what's next on these motions.

1    I'm also inclined to find that even if Mr. Kennedy is

2 not correct, that there's not a boxing-in of the cars, that at

3 a minimum, when the agent tells the driver to turn off the

4 engine, that we have a seizure.  If we don't have a seizure

12:45:01 5 before that point, we have a seizure at that point.

6    So just a couple of leanings.  Of course I'll hear

7 the evidence and I'll listen to arguments of both sides.  But

8 in terms of the motion today, that's the ruling.  And in terms

9 of how that affects the other motions, that's my sense of how

12:45:18 10 it affects the other motions.  I'll hear from counsel on both.

11 And, again, that assumes that there's more of a connection

12 between the phone and the defendant as opposed to the phone

13 and the house.  I don't know how many other people live in the

14 house.

12:45:40 15    MR. TZUR:  Your Honor, I think we can answer that

16 question.  I think the parties agree -- and tell me if I'm

17 wrong, Mr. Kennedy -- that that was Mr. Sanchez-Jara's phone;

18 that that phone was in his possession.  In fact, law

19 enforcement officers found that phone in his possession later

12:45:54 20 on on that day; and also, using not the cell phone simulator

21 technology but the GPS location technology, tracked that phone

22 consistent with Mr. Sanchez-Jara's movements through the day.

23 I'm not confident about that last one.  I believe that I'm

24 correct on that last point, but suffice it to say --

12:46:14 25    THE COURT:  In any case I'm going to hear evidence --

1           MR. TZUR:  Well --

2           THE COURT:  On the next court date, I'm going to hear

3    all of this.

4           MR. TZUR:  Oh, yeah, the defendant admits it.  The

12:46:22   5    defendant says in his affidavit that that is his phone.

6           THE COURT:  Right.  But the question is whether the

7    police know in the alley.

8           MR. KENNEDY:  Also, Your Honor, just now counsel is

9    saying the police were tracking Mr. Sanchez's phone throughout

12:46:35  10    the day, which is news to me.  I was told they found his phone

11    and then they found his home address.

12          MR. TZUR:  Yeah, right.

13          MR. KENNEDY:  And now they've -- I am told they were

14    tracking him by his cell phone all day.

12:46:49  15          THE COURT:  Not with the cell phone simulator --

16          MR. TZUR:  Exactly.

17          THE COURT:  -- at this point.

18          MR. TZUR:  Exactly.

19          MR. KENNEDY:  Oh.

12:46:54  20          MR. TZUR:  And that's the key distinction.

21          THE COURT:  Okay.  So we have those two pending

22    motions.  They do require fact-finding and evidence.  And some

23    of the issues that remain are the validity of the consent, the

24    ability of Individual B to consent, voluntariness of the

12:47:30  25    statement ultimately.  And a lot of that is going to turn on

1      what the government intends to use.  At least one of those

2      motions involved that question.

3            MR. TZUR:  And the government's position is that it

4      intends to use, in terms of statements, post-Miranda

12:47:48   5      admissions and not pre-Miranda admissions.  And I'm being

6      specific about this because that's separate from the

7      statements that Mr. Sanchez gave in connection with his

8      consent.

9            So, for instance, when Mr. Sanchez provides the

12:48:04   10      number of the safe, the government's position is that's a

11      consent that doesn't need Miranda.  That's a legal question.

12      But when Mr. Sanchez says what he knows is in the safe -- that

13      there's cocaine in the safe, that there's cocaine in the

14      truck -- the government only intends to use those statements

12:48:21   15      that were obtained after he gave written Miranda waivers while

16      he was still in the house at about 4:30 p.m. that afternoon.

17            MR. KENNEDY:  Not much to say.

18            THE COURT:  Right, and you don't have to.

19            We do have your pending motion, which we'll address

12:48:42   20      in a second, but I'm inclined to give the parties a little

21      more time to contemplate what's next.  And I don't think -- or

22      I know I don't have a jury the following week either.

23        (Brief pause.)

24            THE COURT:  28th at 1:00 o'clock or 29th at

12:51:13   25      1:00 o'clock?

1          MR. TZUR:  The 28th and 29th, either day at

2    1:00 o'clock, Your Honor?

3          THE COURT:  Yes.

4          MR. TZUR:  I can be available both of those days.

12:51:21  5    MS. RAY:  Yes, Your Honor.

6          THE COURT:  Mr. Kennedy?

7          MR. KENNEDY:  They both work for me, Your Honor.

8          THE COURT:  Let's try the 29th.

9          MR. TZUR:  Works for the government.

10         MR. KENNEDY:  Yes, sir.

11         MS. RAY:  Thank you, Your Honor.

12         THE COURT:  So documents No. 47 and No. 50, I'm going

13   to strike the 20th, just to give more time for the attorneys

14   to contemplate the effect of today's ruling and possibly to

12:51:51  15   confer about possible ways to streamline.  Let's set it for

16   the 29th.

17         And, Mr. Kennedy, any objection to exclude -- the

18   exclusion of the time based upon the fact that these pretrial

19   motions are still pending?

12:52:10  20   MR. KENNEDY:  No objection, Your Honor.

21         THE COURT:  The time will be excluded.

22         And now let's turn to the latest filing.  I'm hoping

23   it's been resolved.

24         MR. KENNEDY:  It was.  Is this the motion to compel?

12:52:22  25   It was resolved.  Those are two of the exhibits that --

1          THE COURT:  So that's withdrawn?

2          MR. KENNEDY:  Yes, sir.

3          THE COURT:  It's document No. 89 is withdrawn.

4          MR. TZUR:  And, Your Honor, yesterday the government

12:52:32   5  filed what it styled as a position paper just trying to inform

6  Your Honor about coercion standards in the Seventh Circuit and

7  about apparent authority standards in the Seventh Circuit.

8          THE COURT:  I received it.

9          MR. TZUR:  Great.

12:52:47   10          THE COURT:  Okay.  We'll see everyone then, including

11  Mr. Sanchez-Jara.  So I'll ask the government to assist him in

12  getting here on that date.

13          MR. TZUR:  Absolutely.

14          THE COURT:  And the interpreters also.

12:52:59   15          THE INTERPRETER:  Yes, Your Honor.

16          THE COURT:  Thursday, September 29th at 1:00 o'clock.

17  Mr. Sanchez-Jara, we'll see you then, sir.

18          MR. TZUR:  Thank you, Your Honor.

19          MR. KENNEDY:  Thank you.

12:53:06   20          MR. TZUR:  And finally, Your Honor, for the record, I

21  will say that the warrant that Your Honor provided is recorded

22  at 15 CR 734, document entry 21-1, pages 17 through 20, in the

23  Southern District of New York.

24          THE COURT:  Thank you.

12:53:27   25          MR. TZUR:  I believe Your Honor is going to put it

1    under seal.

2            THE COURT:  Yes.  Thank you.

3            MR. TZUR:  Thank you, Judge.

4                    *    *    *    *    *

5

6    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
7

8
     _/s/ Nancy C. LaBella___                _November 7, 2016_
9    Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25