RECEIVED

JUL 24 2015

Chief Judge Ruben Castillo
United States District Court

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER RELATING TO TELEPHONE NUMBER (312) 399-9606 ("**SUBJECT PHONE 14**") AND TELEPHONE NUMBER (708) 261-2832 ("**SUBJECT PHONE 15**") | **UNDER SEAL** <br> No. 14 GJ 1008 <br><br> Rubén Castillo <br> Chief Judge |

## APPLICATION FOR A WARRANT AND ORDER
## RELATING TO SUBJECT PHONES 14 AND 15

Paul H. Tzur, an attorney of the United States Department of Justice, hereby applies to the Court for an order relating to:

a.  the telephone currently assigned telephone number (312) 399-9606, and used by an unidentified individual ("UI5"), with service provided by Sprint/Nextel (hereafter, "**Subject Phone 14**"); and

b.  the telephone currently assigned telephone number (708) 261-2832, and used by an unidentified individual ("UI6"), with service provided by Sprint/Nextel (hereafter, "**Subject Phone 15**") (collectively, the "**Subject Phones**").

By this Application, the government requests that this Court enter an Order granting the following relief:

- Authorizing the installation and use, for a period of 30 days, of a pen register and trap and trace device on the **Subject Phones**; and

- Requiring service providers to furnish, for a 30-day period coinciding with the duration of the pen register authority requested in this Application, subscriber information for and subscriber information for telephone numbers in contact with the **Subject Phones**; and

- Requiring service providers to provide historical call detail records for the **Subject Phones** and records reflecting the cell tower and antenna face ("cell site") used at the start and end of each call for the **Subject Phones**, for the period from March 1, 2015, through July 24, 2015; and

- Requiring service providers to provide, for a period of 30 days, all information, facilities, and technical assistance needed to ascertain the physical location of the **Subject Phones** (the "Requested Location Information"),[1] and authorizing, for a period of 30 days, investigating agents to use a pen register, in the form of electronic investigative techniques that capture and analyze signals emitted by cellular telephones, including in private places, to ascertain the physical location of the **Subject Phones**.

This Application also requests that this Court's orders and this Application be sealed until further notice of this Court. This application further requests that, pursuant to Title 18, United States Code, Section 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), this Court authorize notice to be delayed until October 21, 2015.

In support of this Application, applicant states the following:

### Authority to Seek Orders

1. Applicant is an "Attorney for the government" as defined by Federal Rule of Criminal Procedure 1(b)(1)(B) and, therefore, may apply for orders requesting the specified relief pursuant to 18 U.S.C. § 3122 (pen registers and trap-and-trace devices), 18 U.S.C. § 2703 (records concerning electronic communications), and Federal Rule of Criminal Procedure 41 (search warrants).

---

[1] Such information shall include but not be limited to per call measurement data ("PCMD"), evolution data optimized ("EVDO"), Internet protocol detail record ("IPDR"), range-to-tower ("RTT"), tower distance information, data indicating the specific latitude and longitude and street address of the **Subject Phones**, as well as records reflecting the cell tower and antenna face used by the **Subject Phones** at the start and end of any call, and access through any means reasonably available to all location-based services with respect to the **Subject Phones**, such as "Enhanced 911," precision location information, mobile locator information, GPS, or "pinging."

## Factual Background

2.     HSI is investigating allegations that individuals in southern California and the Chicago area are working together to transport narcotics or narcotics proceeds between California and the Chicago area, that UI5 is using **Subject Phone 14**, and that UI6 is using **Subject Phone 15** in furtherance of the transportation.

3.     There is evidence that the **Subject Phones** have been and will be used in furtherance of a criminal offense, namely, conspiracy to distribute narcotics, in violation of Title 21, United States Code, Sections 846 and 841(a) (the "**Subject Offenses**"), and money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, and that information concerning the ongoing use and location of the **Subject Phones** will provide evidence of the **Subject Offenses**.

4.     The facts supporting this application are more fully set forth in the attached affidavit of Homeland Security Investigations ("HSI") Special Agent Tino Gonzalez.

5.     In summary: Since 2013, HSI agents in the Southern District of California have been investigating high-ranking members of the Cartel Jalisco Nueva Generacion drug cartel (the "CJNG Cartel"), which was believed to be established by the leadership of the Sinaloa Cartel as an enforcement cell designed to protect their interests in the southwestern areas of Mexico. Since the inception of the CJNG Cartel, the cartel has broken away from the Sinaloa Cartel and developed a very strong reputation as an independent narcotics cartel based in Guadalajara, Jalisco, Mexico. As part of that investigation, agents have submitted several

3

applications to intercept electronic communications over Blackberry messaging service ("BBM"), which is operated on the network of Blackberry Corporation ("Blackberry"), and obtained orders to that effect. In particular, the United States District Court for the Southern District of California entered an order authorizing, among other things, the interception of communications over the BBM PIN 2BE6D40A ("Gerri Device 1"). "Gerri" is the Blackberry screen name of the user of BBM PIN 2BE6D40A ("GERRI"). As discussed in the attached Affidavit, a number of BBM communications have been intercepted over Gerri Device 1. Several of these communications were with an individual who used the Blackberry screen name "El boys\=D/," and who used BBM PIN 2B53CE19 ("El Boys Device 1"). EL BOYS previously has been intercepted discussing narcotics distribution, and in conversations intercepted on or about July 24, 2015, EL BOYS passed the telephone numbers associated with the **Subject Phones** in connection with narcotics distribution.

### Pen Register and Trap & Trace Certifications and Requests

6.    Applicant requests that this Court issue an order pursuant to Title 18, United States Code, §§ 3122-24 authorizing the installation and use of a pen register and trap and trace device for the **Subject Phones**.

7.    Applicant certifies that: the offenses under investigation include but are not necessarily limited to the **Subject Offenses**; it is believed that UI5 is using **Subject Phone 14** and that UI6 is using **Subject Phone 15** in furtherance of the **Subject Offenses**; and that the information likely to be obtained from the pen

4

register and trap and trace on the **Subject Phones**, including direct connect, push-to-talk, and digital dispatch numbers, is relevant to the ongoing investigation.

8.     Applicant further states that the principal subjects of the aspect of the investigation presently before the Court are UI5 and UI6.

9.     Applicant requests that this Court issue an order authorizing the installation and use of the pen register to record and decode dialing, routing, addressing, and signaling information transmitted by the **Subject Phones**, including direct connect, push-to-talk, and digital dispatch numbers, to record the date and time of such transmissions, and to record the length of time the telephone receiver in question is off the hook for incoming or outgoing calls, for a period of 30 days.[2]

---

[2]     This includes "post-cut-through digits," which are any digits that are dialed from the **Subject Phones** after the initial call setup is completed. For example, "[s]ome post-cut-through dialed digits are telephone numbers, such as when a subject places a calling card, credit card, or collect call by first dialing a long-distance carrier access number and then, after the initial call is 'cut through,' dialing the telephone number of the destination party." *United States Telecom Association v. FCC*, 227 F.3d 450, 462 (D.C. Cir. 2000). That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. Under these circumstances, the "post-cut-through" digits are the type of information (that is, "dialing, routing, addressing, or signaling" information) specifically authorized by the statute for capture.

Title 18, United States Code, Section 3121(c), as amended in 2001, affirmed the requirement to "use technology reasonably available" that restricts the collection of information "so as not to include the contents of any wire or electronic communications." This provision implicitly recognizes that the incidental collection of some content may occur despite the use of reasonably available technology to avoid such capture. With regard to the requirement of Section 3121(c) to use technology reasonably available so as not to include the contents of any wire or electronic communications, the government is not aware of any current technological means of separating out post-cut-through dialed digits that constitute call processing and transmission information from those that might constitute call content without losing dialing, routing, addressing, and signaling information that identifies the destination of communications from the subject telephone. If despite the use of reasonably

10. Applicant further requests that this Court issue an order authorizing the installation and use of a trap and trace device including the feature known as "Caller ID Deluxe" to capture the incoming electronic or other impulses, including the originating telephone in call forwarding, terminating at the **Subject Phones**, which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and the date, time and duration of such incoming impulses, for a period of 30 days, and that the trap and trace device be without geographic limits.

11. Applicant further requests that the order direct the government to use technology reasonably available to it that restricts the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communications.

12. Applicant further requests that the order direct the service provider(s), namely Sprint/Nextel, to forthwith furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace devices, including Caller ID Deluxe, with a minimum of interference with the services accorded to the party with respect to whom the installation and use is to take place, and that reasonable compensation is to be paid

---

available technology, "post-cut-through" digits are captured that constitute the contents of a communication, the government will make no affirmative investigative use of such information absent appropriate authority.

by the government for reasonable expenses incurred in providing such information, facilities, and assistance pursuant to Title 18, United States Code, Section 3124(c).

## Request for Prospective Subscriber Information
## Pursuant to 18 U.S.C. § 2703(d)

13.     Applicant further requests that this Court issue an order, pursuant to Section 2703(d) of Title 18, United States Code, directing that any service provider shall provide all information, facilities, and technical assistance necessary to determine the subscriber information set forth in 18 U.S.C. § 2703(c)(2)(A)-(F), specifically, subscriber name, address, local and long distance telephone connection records, length of service (including start date) and types of services utilized, telephone or instrument number or other subscriber number or identity (including but not limited to International Mobile Subscriber Identity number ("IMSI"), International Mobile Equipment Identity number ("IMEI"), and Electronic Serial Number ("ESN") and means and source of payment for service (including any credit card or bank account number), for and for each outgoing call from and each incoming call to the **Subject Phones**, for a 30-day period coinciding with the duration of the pen register authority requested in this Application. This Application also seeks such subscriber information for the period from March 1, 2015, through July 24, 2015 for the **Subject Phones**.

14.     Pursuant to 18 U.S.C. § 2703(c)(2), a service provider shall provide such information to a governmental entity if, among other ways, the governmental entity obtains a court order under § 2703(d) requiring such disclosure.

15.  Section 2703(d), in turn, allows the issuance of an order for "records or other information" if the government "offers specific and articulable facts showing there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."

16.  As explained in the Affidavit, there are specific and articulable facts showing reasonable grounds to believe that subscriber information for incoming and outgoing phone numbers is relevant and material to this investigation. In a drug trafficking investigation, subscriber information for incoming and outgoing calls often yields investigative leads relating to:

    a.  the identities of co-conspirators, suppliers, customers, and other individuals engaged in drug trafficking;

    b.  the residential addresses of co-conspirators, suppliers, customers, and other individuals engaged in drug trafficking, thus aiding in the surveillance of the targets;

    c.  the addresses of "stash" houses where narcotics are stored or packaged;

    d.  locations at which law enforcement officers can conduct surveillance and trash searches (often referred to as "trash pulls") during the covert phase of the investigation, and interviews and searches once the investigation has become known to the subjects.

17.  In addition, subscriber information can yield evidence of concealment that shows consciousness of guilt; for example, drug traffickers commonly use phones subscribed to other individuals (that is, nominees), to fictitious identities, or to addresses other than their own residences.

18.  As also explained in the affidavit, obtaining full subscriber information is important to the investigation because, among other things:

a. if the subscriber name is a common one and/or the subscriber address is not current, it can be difficult to accurately identify the subscriber without a date of birth, driver's license, or social security number, especially in an area with a population as large as the Northern District of Illinois;

b. if the subscriber name and address is fictitious, which frequently is the case when criminals and their associates purchase telephones, all or part of the remaining identification information may be truthful (such as the date of birth for prepaid phones) and may help identify the subscriber or lead to identifying other coconspirators;

c. by accurately identifying subscribers using the above-requested information, agents can eliminate tangential individuals and businesses as surveillance or intelligence targets, thereby permitting law enforcement officers to focus efforts on high-probability locations and persons;

d. payment information can provide leads to financial accounts that in turn can be sources of information regarding the subject's criminal activities and associates; and

e. conducting interviews of persons who have had telephonic communication or personal contact with an offender may unearth witnesses or informants able to provide information leading to evidence of the **Subject Offenses** and the arrest of the offender.

19. It bears note that § 2703(d) does not require that the government show criminal culpability of the individual who is the subject of the requested information – for example, the subscriber of a phone number that has been in contact with the **Subject Phones**. Rather, the text of § 2703(d) explicitly requires that the showings necessary to obtain information be evaluated in the context of an "ongoing criminal *investigation*." 18 U.S.C. § 2703(d) (emphasis added). Section 2703(d) states, in pertinent part, that the court shall issue an order requiring disclosure by the service provider if the government offers:

*specific and articulable* facts showing that there are *reasonable grounds to believe* that the . . . records or other information sought, are *relevant and material* to an ongoing criminal *investigation.*

(Emphasis added.) Nothing in the statute requires that the government show – prior to obtaining and evaluating the information – that the information sought is evidence of a crime in the sense of evidence to be introduced at trial.

20.     Rather, the statute measures relevancy and materiality by referring to the term "investigation." As the Supreme Court recognizes in other contexts dealing with subpoenas, "investigation" means the steps that law enforcement takes to determine whether a crime has occurred *or not* – that is, there is no need for a prior showing that the subject of the particular information sought is involved in the crime under investigation because the very purpose of requesting the information is to find out whether the subject has committed a crime. *See United States v. R. Enterprises*, 498 U.S. 292, 297 (1991).

21.     Accordingly, Applicant requests that this Court enter an Order, pursuant to 18 U.S.C. § 2703(d), directing that any service provider provide all information, facilities, and technical assistance necessary to determine the subscriber information set forth in 18 U.S.C. § 2703(c)(2) for telephones in contact with the **Subject Phones** for a period of 30 days.

### Request for Historical Call Detail and Cell Site Information

22.     Pursuant to 18 U.S.C. § 2703(c)(1)(B), a governmental entity may require a provider of electronic communication service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including

the contents of communications) if, among other ways, the governmental entity "obtains a court order for such disclosure under subsection (d) of this section."

23. Section 2703(d), in turn, allows the issuance of an order for "records or other information" if the government "offers specific and articulable facts showing there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."

24. Data pertaining to the tower and antenna face used at the beginning and end of each call from a cellular telephone is "information," it takes the form of a "record" upon its transmission to the service provider, and this record and information "pertains to" a subscriber or customer of an electronic communication service.

25. As explained in the accompanying Affidavit, there are reasonable grounds to believe that historical call detail records for the **Subject Phones** and historical cell site information for the **Subject Phones** for the period from March 1, 2015, through July 24, 2015, are relevant and material to the ongoing drug trafficking investigation. Among other things, law enforcement officers can use historical call detail records and historical cell site information to analyze the past use of the **Subject Phones**, and thereby obtain information about the subjects' co-conspirators, associates, whereabouts, and activities, as well as patterns of behavior. In particular, in drug trafficking investigations, information about the past use of the **Subject Phones** is likely to be of assistance in identifying participants in, and witnesses with information relevant to, drug trafficking

activity, as well as the whereabouts of participants in the drug trafficking at times relevant to the investigation.

26. Accordingly, Applicant requests that this Court enter an Order, pursuant to 18 U.S.C. § 2703(d), directing Sprint/Nextel to provide historical call detail records for the **Subject Phones**, and directing Sprint/Nextel to provide historical cell site information reflecting the cell tower and antenna face used at the start and end of each call, text message, and data transaction, including per call measurement data ("PCMD"), evolution data optimized ("EVDO"), Internet protocol detail record ("IPDR"), range-to-tower ("RTT") and tower distance information, for the **Subject Phones** for the period of March 1, 2015 through July 24, 2015.

### Application for Order Authorizing the Seizure of Information Needed to Ascertain the Physical Location of the Subject Phones For a Period of 30 Days

27. Applicant next requests, pursuant to Title 18, United States Code, Section 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure, that this Court issue an order directing Sprint/Nextel and any other communication service providers, as defined in 18 U.S.C. § 2510(15), to provide to agents of Homeland Security Investigations, for a period of 30 days, all information, facilities, and technical assistance needed to ascertain the physical location of the **Subject Phones**, including but not limited to the Requested Location Information.

28. As set forth in more detail in the Affidavit of Special Agent Tino Gonzalez, there is probable cause to believe that information concerning the location of the **Subject Phones** at times determined by investigators will constitute or lead to evidence of the **Subject Offenses**, in that among other things, it provides

evidence regarding the whereabouts of subjects of investigation at times when criminal conduct may be occurring; identifies locations where criminal activity may be occurring, thereby assisting law enforcement agents in establishing surveillance, identifying participants, and identifying locations and vehicles to be searched for physical evidence; and assists in identifying patterns of activity and movement, as well as relationships among individuals involved in the criminal activity.

29.    Accordingly, Applicant requests that this Court issue an Order directing Sprint/Nextel and any other communication service providers, as defined in 18 U.S.C. § 2510(15), to disclose, for a period of 30 days, the Requested Location Information concerning the **Subject Phones**, and to initiate a signal to assist in determining the location of the **Subject Phones** on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by Homeland Security Investigations, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider affords the user of the **Subject Phones**, at any time of the day or night, owing to the potential need to locate the **Subject Phones** outside of daytime hours.

### Request for Authorization to Use a Cell-Site Simulator

30.    Applicant further requests, pursuant to Rule 41 of the Federal Rules of Criminal Procedure[3] and Title 18, United States Code, Section 3127(3), that this

---

[3]    The government makes this application upon a showing of probable cause. However, because a cell-site simulator constitutes a "pen register" device within the meaning of Title 18, United States Code, Section 3127(3), in that it is "a device or process which records or

Court's order authorize Homeland Security Investigations, and other authorized law enforcement officers, to employ electronic evidence techniques, including a cell-site simulator, described in the accompanying affidavit, including in private places, to capture and analyze signals emitted by the **Subject Phones** for a period of 30 days, and that the use of the device be without geographic limits.

31.     As set forth in the affidavit of Special Agent Tino Gonzalez, agents can employ electronic investigative techniques, including a cell-site simulator, to detect radio signals that are emitted automatically at the time a cell phone is turned on, and periodically thereafter as long as the phone remains on, regardless of whether a call is being made, to communicate with the cellular infrastructure, including cell towers. These signals contain identifying numbers for the telephone (*e.g.*, the telephone number and ESN or IMSI number). Agents intend to use these techniques to identify the location from which the **Subject Phones** is operating. The techniques do not intercept any content of communications, but rather search for signals emitted by the subject telephone, which are identified through its identifying numbers (which are already known to law enforcement through other means). Once the subject phone's signals are identified (typically, through the use of

---

decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," and because the information it obtains does not include the contents of any communication, the applicant certifies that the offenses under investigation by Homeland Security Investigations include but are not necessarily limited to the Subject Offenses; it is believed that the subjects of this investigation and others yet unknown are using communication facilities in furtherance of the Subject Offenses; and that the information likely to be obtained from the use of a pen register device in the form of electronic investigative techniques that capture and analyze signals emitted by cellular telephones is relevant to the ongoing criminal investigation.

a cell-site simulator, which can be used only when it is in the general proximity of the subject telephone), the strength of the signal emitted by the subject phone can be analyzed to ascertain the general direction and location of the signal, which can assist in identifying the location from which the subject cell phone is operating, thus providing location information similar to that which ordinarily is known for a land line phone.

32.    Applicant requests that this Court's order authorize Homeland Security Investigations, and other authorized law enforcement officers, to employ electronic investigative techniques, including in private places, to capture and analyze signals emitted by the **Subject Phones** to determine the location of the **Subject Phones**, at times determined by investigators. Agents will employ these techniques when the location of the subject phone will constitute or lead to evidence of the **Subject Offenses**, such as, evidence regarding the whereabouts of subjects of investigation at times when criminal conduct may be occurring; evidence of the locations where criminal activity may be occurring, thereby assisting law enforcement agents in establishing surveillance, identifying participants, and identifying locations and vehicles to be searched for physical evidence; and evidence of patterns of activity and movement, as well as relationships among individuals involved in the criminal activity.

33.    Applicant requests that this Court's order, authorizing the use of electronic investigative techniques to capture and analyze signals emitted by the **Subject Phones**, direct Homeland Security Investigations to neither retain nor

make affirmative investigative use of the data acquired beyond that necessary to determine the location of the **Subject Phones**.

### Sealing of this Application and this Court's Orders and Related Relief

34.     Applicant further requests that this Court issue an Order directing any service provider, and their representatives, agents, and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, to the listed subscriber for the **Subject Phones**, the subscribers of the incoming calls to or the outgoing calls from the **Subject Phones**, or to any person, the existence of this Court's orders, in full or redacted form, or of this investigation unless ordered by this Court.

35.     Applicant further requests that this Court order that its Orders and this Application be sealed until further notice of this Court, except that copies of the Orders, in full or redacted form, may be served on law enforcement officers assisting in the investigation and any service provider, their representatives, agents, and employees, as necessary to effectuate this Court's Orders.

36.     Pursuant to Rule 41(f)(3) and Title 18, United States Code, Section 3103a(b), the government further requests permission to delay notification of execution of any Order requested in this Application until October 21, 2015. As set forth in the Affidavit, providing immediate notification of the execution of the Order may have an adverse result as defined at Title 18, United States Code, Section 2705(a)(2), namely flight from prosecution and otherwise seriously jeopardizing an investigation. Moreover, as set forth in the Affidavit, the facts of

this case justify a period of delay in excess of 30 days, and there is reasonable necessity for the seizure of the Requested Location Information.

37.     Applicant further requests that execution of any warrant issued with respect to the use of electronic investigative techniques and obtaining location information be authorized at any time of the day or night, good cause having been shown.

38.     Applicant further requests that the government be ordered to commence execution of the use of electronic investigative techniques to identify or locate within 10 days, and that any warrant issued in this matter shall be returned to this Court.

39.     Finally, Applicant requests that Sprint/Nextel and any other service provider of wire or electronic communication service, as defined in Section 2510(15) of Title 18, United States Code, shall be compensated by the government at the prevailing rate for the provision of all information, facilities, and technical assistance necessary to execute this Court's order.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: July 24, 2015.

PAUL H. TZUR
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

ss

## AFFIDAVIT

I, Tino Gonzalez, being duly sworn, state as follows:

### Background of Affiant

1.     I am a Special Agent with the Homeland Security Investigations ("HSI") and have been so employed since approximately October 2001. I am currently assigned to HSI, and my responsibilities include the investigation of narcotics trafficking and money laundering offenses.

### Basis and Purpose of Affidavit

2.     The information in this Affidavit is based on interviews of witnesses, my own observations and actions, information received from other law enforcement agents, my experience and training, and the experience of other agents.

3.     This Affidavit is submitted for the limited purposes of: (1) establishing that there are specific and articulable facts showing that there are reasonable grounds to believe that the information sought in the attached Application pursuant to 18 U.S.C. § 2703 is relevant and material to an ongoing criminal investigation; and (2) establishing probable cause to believe that a criminal offense has been committed and that the location information sought in the attached Application (specifically, information relating to the location of the cellular telephone described immediately below) will lead to relevant and material information in the investigation of allegations that individuals in southern California and the Chicago area are working together to transport narcotics or narcotics proceeds between

California and the Chicago area, and that an unidentified individual ("UI5") is using **Subject Phone 14** and another unidentified individual ("UI6") is using **Subject Phone 15** in furtherance of the transportation.

4.     Because of the limited purpose of this Affidavit, I have not included all of the facts known to me or other law enforcement officers about the investigation.

## The Subject Phones

5.     The telephone that is the subject of the attached application is:

a.     the telephone currently assigned telephone number (312) 399-9606, and used by an unidentified individual ("UI5"), with service provided by Sprint/Nextel (hereafter, "**Subject Phone 14**"); and

b.     the telephone currently assigned telephone number (708) 261-2832, and used by an unidentified individual ("UI6"), with service provided by Sprint/Nextel (hereafter, "**Subject Phone 15**") (collectively, the "**Subject Phones**").

6.     As further set forth below, there is reason to believe that the **Subject Phones** have been and will be used in furtherance of a criminal offense, namely conspiracy to distribute narcotics, in violation of Title 21, United States Code, Sections 846 and 841(a) (the "**Subject Offenses**"), and money laundering, in violation of Title 18, United States Code, Sections 1957 and 1957, and that information concerning the ongoing use and location of the **Subject Phones** will provide evidence of the **Subject Offenses**.

## Background of the Investigation

7.     Since 2013, HSI agents in the Southern District of California have been investigating high-ranking members of the Cartel Jalisco Nueva Generacion drug cartel (the "CJNG Cartel"), which was believed to be established by the

leadership of the Sinaloa Cartel as an enforcement cell designed to protect their interests in the south western areas of Mexico. Since the inception of the CJNG Cartel, the cartel has broken away from the Sinaloa Cartel and developed a very strong reputation as an independent narcotics cartel based in Guadalajara, Jalisco, Mexico. As part of that investigation, agents have submitted several applications to intercept electronic communications over Blackberry messaging service ("BBM"), which is operated on the network of Blackberry Corporation ("Blackberry"), and obtained orders to that effect. In particular, the United States District Court for the Southern District of California entered an order authorizing, among other things, the interception of communications over the BBM PIN 2BE6D40A ("Gerri Device 1"). "Gerri" is the Blackberry screen name of the user of BBM PIN 2BE6D40A ("GERRI").

8. On June 29 and 30, 2015, as well as on July 23, 2015, this Court entered orders authorizing the collection of GPS location data for two cellular telephones.[1] Those phone numbers were obtained through the interceptions of BBM communications by law enforcement officers in San Ysidro, California. Several of those communications were with an individual who used the Blackberry screen name "El boys\=D/" ("EL BOYS") and who used BBM PIN 2B53CE19 ("El Boys Device 1"). In those communications, the participants to the BBM conversation, including EL BOYS, discussed the delivery of 71 kilograms of cocaine and

---

[1] The June 29th and 30th applications are available for this Court's review upon request and are incorporated here.

3

9 kilograms of heroin to an unknown recipient of the narcotics. As discussed further below, on or about July 24, 2015, EL BOYS was intercepted discussing the delivery of 100 kilograms of cocaine to an unknown recipient of the narcotics. Additionally, EL BOYS was intercepted passing the telephone numbers associated with **Subject Phone 14** and **Subject Phone 15** in connection with narcotics distribution.

## Intercepted Communications

9.     On or about July 24, 2015 (Sessions 1225, 1227, 1228, 1229, 1243, 1248, 1278, 1279 and 1281), GERRI, who was using Gerri Device 1, had BBM conversations with EL BOYS, who was using El Boys Device 1, as well as an individual who used BBM PIN 2BD8E45B, which was associated with Blackberry screen name "Hero" (hereinafter, "HERO" and "Hero Device 1"), and an individual who used BBM PIN 27184C6D, which was associated with Blackberry screen name "Buff − batman" (hereinafter, "BUFFY" and "Buffy Device 1"). During these conversations, the following was written:

> HERO to GERRI (8:53 a.m.)[2]: Arriving to chicas tomorrow [the cocaine shipment would be arriving to Chicago on July 25, 2015][.] [3]

> GERRI to HERO (8:53 a.m.): Ok.

---

[2]     All times identified in this Affidavit are in Pacific Daylight Savings Time and are approximate.

[3]     Unless otherwise noted, the recorded conversations quoted in this Affidavit were conducted in Spanish and translated into English. For these recordings, I have relied on drafts, not final transcripts, of the conversations. At various points in the Affidavit, I have offered my interpretations of certain intercepted conversations in brackets. My interpretations of these conversations are based on my knowledge of the investigation, conversations with HSI agents in San Ysidro, California, review of the recorded conversations obtained in this investigation, the contents and context of the conversations, conversations with other officers and agents, and my experience and familiarity with narcotics trafficking organizations generally.

GERRI to HERO (8:53 a.m.): I'll send you the # [GERRI was going to send HERO the telephone number of the individuals delivering the cocaine][.]

HERO to GERRI (8:54 a.m.): Yes, send it to Buffy [HERO told GERRI to send the telephone numbers to BUFFY][.]

GERRI to EL BOYS (9:29 a.m.): Tell the old men to be on the ball this time so that he don't put us under stress, they are going to be 100 [GERRI told EL BOYS to let the individuals delivering and picking up the cocaine know to be ready this time because there would be 100 kilograms of cocaine][.]

BUFFY to GERRI (9:30 a.m.): Hey bro that guy is asking me for the number to las chicas [the individual delivering the cocaine was asking for the telephone number for the individual in Chicago delivering the cocaine][.]

GERRI to BUFFY (10:19 a.m.): I'm going to send you 2 okay. You can call any of the two [GERRI was going to send BUFFY two phone numbers BUFFY could contact, and both telephone number were for the same person][.]

EL BOYS to GERRI (10:20 a.m.): 3123993906 [that is, **Subject Phone 14**] and 7082612832 [that is, **Subject Phone 15**]. Have them ask for Gasparin [EL BOYS passed GERRI the two phone numbers, **Subject Phone 14** and **Subject Phone 15**][.]

GERRI to BUFFY (10:20 a.m.): 3123993906 and 7082612832. Have them ask for Gasparin [GERRI forwarded **Subject Phone 14** and **Subject Phone 15** to BUFFY][.]

Based on my training and experience, the content, context, and timing of these communications, as well as the content and context of other communications intercepted per wiretap authority issued by the United States District Court for the Southern District of California, I believe that GERRI received from EL BOYS two telephone numbers, **Subject Phone 15** and **Subject Phone 15**, associated to the individuals delivering a cocaine shipment in the area of Chicago. I further believe

that GERRI relayed those telephone numbers to BUFFY in order for BUFFY to coordinate the delivery and receipt of approximately 100 kilograms of cocaine.

## Planned Investigation

10.    HSI plans to use the information requested in the attached Application to (i) identify UI5, UI6, and UI4's and UI6's co-schemers; (ii) assist in establishing surveillance and patterns of activity concerning UI5, UI6, and UI5's and UI6's co-schemers; and (iii) help to identify methods of distribution and locations used to store the narcotics and proceeds from the sale of the narcotics.

11.    HSI further plans to use the information requested in the attached Application to identify and locate individuals who are in contact with the offender or offenders and may be able to provide information relevant to the investigation.

12.    As set forth above, there is reason to believe that the **Subject Phones** is being used in connection with the criminal conduct that is under investigation, and that the information likely to be obtained from the use of a pen register and trap and trace device will be relevant to the ongoing investigation.

## Relevancy & Materiality of Subscriber Information to the Investigation

13.    Based on my training and experience, I know that information identifying the subscribers of telephone numbers used by persons involved with criminal activity and by those in contact with persons involved with criminal activity (and staying abreast of the subscriber information associated with any service of subscriber change) is likely to yield information that is relevant and material to the investigation.

14. In a drug trafficking investigation, subscriber information often yields investigative leads relating to:

    a.      the identities of co-conspirators, suppliers, customers, and other individuals engaged in drug trafficking;

    b.      the residential addresses of co-conspirators, suppliers, customers, and other individuals engaged in drug trafficking, thus aiding in the surveillance of the targets;

    c.      the addresses of "stash" houses where narcotics are stored or packaged; and

    d.      locations at which law enforcement officers can conduct surveillance and trash searches (often referred to as "trash pulls") during the covert phase of the investigation, and interviews and searches once the investigation has become known to the subjects.

15. Based on my training and experience, I also know that obtaining the subscriber name, address, date of birth, social security number, driver's license information, contact names and numbers, employment information, and method of payment is important to the investigation because, among other things:

    a.      if the subscriber name is a common one and/or the subscriber address is not current, it can be difficult to accurately identify the subscriber without a date of birth, driver's license, or social security number, especially in an area with a population as large as the Northern District of Illinois;

    b.      if the subscriber name and address is fictitious, which frequently is the case when criminals and their associates purchase telephones, all or part of the remaining identification information may be truthful (such as the date of birth for prepaid phones) and may help identify the subscriber or lead to identifying other coconspirators;

    c.      by accurately identifying subscribers using the above-requested information, agents can eliminate tangential individuals and businesses as surveillance or intelligence targets, thereby

permitting law enforcement officers to focus efforts on high-probability locations and persons;

d.  payment information can provide leads to financial accounts that in turn can be sources of information regarding the subject's criminal activities and associates; and

e.  conducting interviews of persons who have had telephonic or personal communications with an offender is a basic investigative technique that may unearth witnesses or informants able to provide information leading to evidence of the **Subject Offenses.**

### Request for Historical Call Detail and Cell Site Information

16.  Based on my training and experience, I believe that there are reasonable grounds to believe that historical call detail records for the **Subject Phones** and historical cell site information for the **Subject Phones** for the period from March 1, 2015, through July 24, 2015, are relevant and material to the ongoing drug trafficking investigation. Among other things, law enforcement officers can use historical call detail records and historical cell site information to analyze the past use of the **Subject Phones**, and thereby obtain information about the subjects' co-conspirators, associates, whereabouts, and activities, as well as patterns of behavior. In particular, in drug trafficking investigations, information about the past use of the **Subject Phones** is likely to be of assistance in identifying participants in, and witnesses with information relevant to, drug trafficking activity, as well as the whereabouts of participants in the drug trafficking at times relevant to the investigation.

## Relevancy & Materiality of Phone Location Information

17.    Based on my training and experience, I believe that there is probable cause to believe that information regarding the location of the **Subject Phones** namely, from Sprint/Nextel, all information, facilities, and technical assistance needed to ascertain the physical location of the **Subject Phones** will constitute or lead to evidence of the **Subject Offenses**. The ability to obtain real-time information about the location of persons involved in criminal activity is valuable to investigators in several ways. Among other things, it provides evidence regarding the whereabouts of subjects of investigation at times when criminal conduct may be occurring; identifies locations where criminal activity may be occurring, thereby assisting law enforcement agents in establishing surveillance, identifying participants, and identifying locations and vehicles to be searched for physical evidence; and assists in identifying patterns of activity and movement, as well as relationships among individuals involved in the criminal activity.

18.    It is important to the investigation to obtain information from location-based services of the service provider beyond what is commonly known as "cell site information" – that is, records reflecting the cell tower and antenna face used by the **Subject Phones** at the start and end of calls. Cell site information, while useful, typically provides only coarse and non-specific information regarding the location of a telephone based on the coverage area of the cell towers in the vicinity of the phone.

19.    Information obtained from the telecommunications providers using their "Enhanced 911" tools, such as Global Positioning System (GPS) fixes,

triangulation, cell-site "pings," received signal strength indicator (RSSI), and timing offset analysis (Doppler-type measurements), precision location information, and mobile locator information, can be much more precise in getting investigators closer to the subject telephone and, thus, to the individual using that telephone. (This process will not intercept the content of any wire communication.) When those location-based services are employed, service providers and law enforcement agents are able to more accurately determine the location of the actual telephone than by using cell site information alone, which typically provides information only about the location of the cell tower and (ordinarily) the direction from which the signal is strongest. In addition, the use of Enhanced 911 and similar technology does not require that law enforcement officers be located in physical proximity to the target telephone. Because of the investigative importance of obtaining information regarding the location of the **Subject Phones** at specific times determined by investigators, rather than only at the beginnings and ends of telephone calls, this Application seeks authority for the use of location-based services at times determined by investigators.

### Request for Authorization to Use Investigative Techniques to Capture Signals Emitted by Cellular Telephones

20.    The attached application further requests, pursuant to Rule 41 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3127(3), that this Court's order authorize Homeland Security Investigations,, and other authorized law enforcement officers to use a pen register, in the form of electronic investigative techniques that capture and analyze signals

emitted by the **Subject Phones** for a period of 30 days, including in private places, and that the use of the techniques be without geographic limits.

21.     The techniques sought to be used by law enforcement officers will detect radio signals that are emitted automatically at the time a cell phone is turned on, and periodically thereafter as long as the phone remains on, regardless of whether a call is being made, to communicate with cellular infrastructure, including cell towers. The techniques also receive signals emitted by a phone in response to signals sent by law enforcement officers. These signals emitted by phones contain identifying numbers for the telephone (*e.g.*, the telephone number and ESN or IMSI number).

22.     These techniques can assist law enforcement in identifying the location from which a cell phone is operating. The techniques do not intercept any content of communications, but rather search for the signals emitted by the subject telephone, which are identified through its identifying numbers (which are already known to law enforcement through other means). For example, once the subject phone's signals are identified by a cell-site simulator (which can be used only when it is in the general proximity of the target telephone), the device can measure the strength of the signal emitted by the subject phone in order to ascertain the general direction and location of the signal, which can assist in identifying the location from which the target cell phone is operating.

23.     The use of these techniques to ascertain the location of the **Subject Phones** is appropriate in this investigation because they can assist agents in

ascertaining the location of the subject phone with greater specificity once approximate location information has been obtained through other means, such as location-based services of the service provider. These techniques are particularly valuable in ascertaining the location of a subject phone within private places, including a building that may have many units or rooms, or in crowded areas.

24.     The attached application requests that this Court's order authorize Homeland Security Investigations, and other authorized law enforcement officers, to employ electronic investigative techniques to determine the location of the **Subject Phones** by capturing and analyzing the signals emitted by the phone to communicate with cellular infrastructure. As explained in detail above, there is probable cause to believe that information concerning the location of the **Subject Phones** at times determined by investigators will constitute or lead to evidence that is relevant and valuable to the ongoing investigation.

### Delayed Notification and Related Relief

25.     There is good cause to permit the seizure of location information relating to the **Subject Phones**, at any time of the day or night, because of the need to locate the subjects of this investigation at all hours of the day or night. Several of the communications intercepted by San Ysidro during the course of the investigation there have been transmitted after 9:00 p.m. Additionally, based on my training and experience, individuals engaged in narcotics trafficking and the movement and laundering of narcotics proceeds often conduct their illegal activities at nighttime to avoid detection by law enforcement.

26.     Providing immediate notification of the execution of any warrant requested in the attached application may have an adverse result as defined at Title 18, United States Code, Section 2705(a)(2), namely, flight from prosecution and otherwise seriously jeopardizing an investigation, in that if UI5, UI6, and UI5's and UI6's co-schemers were to learn about this application, they could become suspicious of individuals with whom they worked to arrange their narcotics-distribution activities, which in turn could lead them to suspend their drug trafficking activity, become more secretive in how they do business, or flee.

27.     Moreover, the facts of this case justify a period of delay in excess of 30 days, and as set forth above, there is reasonable necessity for the seizure of signal and location information relating to the **Subject Phones**.

FURTHER AFFIANT SAYETH NOT.

Tino Gonzalez
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this 24th day of July, 2015.

NOTARY PUBLIC

RITA MALLOY
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
December 15, 2015